James O. GERST, Savings and Loan Commissioner of Texas et al., Appellants,

v.

Orren L. NIXON et al., Appellees.

No. 11389.

Court of Civil Appeals of Texas.

Austin.

Feb. 2, 1966.

Rehearing Denied March 9, 1966.

Waggoner Carr, Atty. Gen., Hawthorne Phillips, First Asst. Atty. Gen., T. B. Wright, Executive Asst. Atty. Gen., Paul W. Phy, John W. Fainter, Jr., Asst. Attys. Gen., Joe R. Long, Austin, for appellants.

Heath & Davis, Dudley D. McCalla, Alvis & Carssow, Austin, for appellees.

ARCHER, Chief Justice.

This suit was filed by appellees, seeking to set aside an order issued and promulgated by said appellant on November 19, 1964, which denied a savings and loan charter to said appellees. Appellant's order complained of herein was issued subsequent to appellees' filing of an application with said appellant for permission to open a Savings and Loan Association in Livingston, Polk County, Texas. Prior to issuing said order, appellant held a public hearing after giving proper notice to all interested parties of appellees' application for a savings and loan charter. Appellant, Southeast Texas Savings and Loan Association, appeared at said public hearing for the purpose of protesting the granting of a charter to appellees and also filed its petition in intervention on the side of appellant Gerst and participated in the trial below.

The appeal is from the order of the Commissioner complained of herein and was timely filed in the court below pursuant to the appeal provisions of the Texas Savings and Loan Act, Article 852a, Section 11.12, R.C.S.

Before the Commissioner may grant a savings and loan charter, he is required to make affirmative findings on each of the following standards by the Texas Savings and Loan Act, Article 852a, Section 2.08, R.C.S.

1. The prerequisites, where applicable, set forth in Sections 2.02, 2.03, 2.04, 2.05, and 2.06 have been complied with and that the Articles of Incorporation comply with all other provisions of the Act;

2. The character, responsibility and general fitness of the persons named in the Articles of Incorporation are such as to command confidence and warrant belief that the business of the proposed association will be honestly and efficiently conducted in accordance with the intent and purpose of the Act and that the proposed association will have qualified full-time management;

3. There is a public need for the proposed association, and the volume of business in the community in which the proposed association will conduct its business is such as to indicate profitable operation;

4. The operation of the proposed association will not unduly harm any existing association.

In denying appellees' application the Commissioner found there was no public need for the proposed association; that there was not a likelihood of profitable operation; that the proposed association would unduly harm an existing association. The Commissioner made affirmative findings on all of the other standards set forth in Section 2.08 of the Savings and Loan Act.

This cause was tried before the court below without a jury on August 10, 1965. The court entered its judgment on August 13, 1965, setting aside the Commissioner's order and remanding it to the Commissioner for proper action.

Appellees in this case have attacked the validity of the Commissioner's order. It is well settled that an appeal from an order either granting or denying an application for a savings and loan charter is tried under the substantial evidence rule, and therefore, the burden is on the party attacking the Commissioner's order to show that such order is not reasonably supported by substantial evidence. The order of the Commissioner is presumed valid until it is shown to be invalid. Such a determination involves a question of law and not of fact. The courts may not substitute their discretion for that of the Commissioner in determining whether the Commissioner's order is reasonably supported by substantial evidence. It is the position of the Commissioner that the trial court has erred in substituting its discretion for that of the Commissioner in setting aside the order complained of herein which denied appellees' application for a savings and loan charter. We do not believe that the

Commissioner's order of November 19, 1964, is reasonably supported by substantial evidence and a valid and lawful order.

The appeal is founded on one point of error and reads:

"The trial court erred in not holding the order of November 19, 1964, entered by the Savings and Loan Commissioner of Texas, denying a savings and loan charter to appellees was reasonably supported by substantial evidence, and holding said order null and void and of no force and effect."

■ Exclusive authority to charter State Savings and Loan Associations in Texas has been delegated by the Legislature to the Savings and Loan Commissioner in the Savings and Loan Act, Art. 852a, R.C.S. In granting corporate charters in which a determination of "public need" must be made, the Commissioner is performing a quasi-legislative function. Chemical Bank and Trust Co. v. Falkner, 369 S.W.2d 427 (Sup.Ct.1963). Interested parties may appeal orders of the Commissioner which grant or deny savings and loan charters under the Act, Art. 852a, Sec. 11.12, R.C.S. The method of trying such appeals is set forth in Section 11.12(5) (b) which provides:

"The review of any other act, order, ruling or decision of the Commissioner or of any rule or regulation shall be tried by the court without a jury in the same manner as civil actions generally and all fact issues material to the validity of the Act, order, ruling, decision or rule or regulation complained of shall be redetermined in such trial on the preponderance of the competent evidence, but no evidence shall be admissible which was not adduced at the hearing on the matter before the Commissioner or officially noticed in the record."

Such a statutory provision relating to appeals from administrative orders is unique in Texas law, however appeals from orders of the Commissioner granting or denying savings and loan charters are tried under the substantial evidence rule and not under the preponderance of the evidence rule. As the Court said in Gerst et al. v. Cain et al., 388 S.W.2d 168 (Sup.Ct.1965) at page 170:

"* * * his findings could not be arbitrary or capricious, but must have had support in substantial evidence. * * *"

■ Since the Commissioner was acting in a quasi-legislative capacity in denying a savings and loan charter to appellees, the order denying such charter is presumed valid.

Trapp et al. v. Shell Oil Co., Inc. et al., 145 Tex. 323, 198 S.W.2d 424 (1946).

■ The presumption in favor of the validity of the Commissioner's order is a rebuttable presumption; however, the burden is on the party attacking such order, appellees in this case, to show that the administrative order is not reasonably supported by substantial evidence. 1 Tex.Jur. 2d 688, Administrative Law, Sec. 43.

Since the matter of granting or denying savings and loan charters has been delegated by the Legislature to the Commissioner, the courts may not substitute their discretion and judgment for that of the Commissioner in determining whether the Commissioner's order denying appellees' application for a savings and loan charter is reasonably supported by substantial evidence. Chemical Bank & Trust Co. v. Falkner, supra.

■ In determining whether the order of the Commissioner is reasonably supported by substantial evidence, the courts must review the record as a whole as made before the trial court. In this case the only record before the trial court was the record of the hearing before the Commissioner relative to appellees' appli-

cation for a savings and loan charter which is the only evidence properly before the courts under the appeal provisions of the Savings and Loan Act, Art. 852a, Sec. 11.12(5) (b), R.C.S., which provides, in part:

"Section 11.12.

(5) Trial.

(b) The review of any other act, order, ruling or decision of the Commissioner or of any rule or regulation shall be tried by the court without a jury in the same manner as civil actions generally and all fact issues material to the validity of the Act, order, ruling, decision or rule or regulation complained of shall be redetermined in such trial on the preponderance of the competent evidence, but no evidence shall be admissible which was not adduced at the hearing on the matter before the Commissioner or officially noticed in the record of such hearing.

(6) Burden of Proof and Judgment. The burden of proof shall be on the plaintiff. The reviewing court may affirm the action complained of or remand the matter to the Commissioner for further proceedings."

Appellees' counterpoint No. 1 is that the findings of the Commissioner adverse to them were not reasonably supported by substantial evidence and that a preponderance of the evidence demands affirmative findings upon those issues decided adversely to appellees.

In his order the Commissioner found favorably for the appellees on Items 1 and 2, supra, but further found there was no public necessity for the proposed Livingston Savings and Loan Association; that the volume of business in the community in which it proposed to conduct its business was not such as to indicate a profitable operation, and that the operation of the proposed Livingston Savings and Loan Association would unduly harm Southeast Texas Savings and Loan Association.

Since there is no question as to the general fitness of the persons named in the Articles of Incorporation it is not necessary to go into the testimony concerning such persons.

At the hearing the proponents offered evidence, the first witness was J. M. Windham of Livingston, one of the Directors of the proposed Association, who testified that the capital stock of $100,000.000 and $50,000.00 paid in surplus, was on deposit with banks; that there were 123 stockholders, and that there were separate pledges of deposits in an amount equal to $290,000.00. Mr. Windham stated that he had lived in Livingston for 37 years and was in the construction business, and one of the Directors of the First State Bank, and listed the other directors of the Association and their businesses and other activities. The witness set out the need for a Savings and Loan Association in Livingston, setting out the towns in the 50 mile radius and the distances to associations in other cities and counties, and that Woodville was 38 miles from Livingston and other associations farther away.

The witness set out anticipated industries including the Lake Livingston project which would increase the business activity and the population in the area.

A summary of new residence construction in Polk County for the years 1961, 1962, 1963 and a part of 1964 was introduced with an aggregate total of $1,152,-960.94, taken from the lien records of the county.

Orren L. Nixon, one of the proposed Directors testified that he was with a grain and grocery company and manager of the Livingston Wholesale Builders Supply, a division and solely owned by Livingston Grain and Grocery Company begun by the father of the witness 50 years

prior to the hearing. Mr. Nixon testified that the sale of wholesale building materials in the Livingston area amounted to $750,000.00, and that there were other distributors, and estimated the volume of building materials amounted to approximately two million dollars in the general vicinity, and that there were outside suppliers, particularly from Houston. He identified a number of pictures of new houses, and of downtown Livingston with a picture of the proposed site for the association, which is the old National Bank Building, and other pictures of the City Hall, the Courthouse, the Sam Houston Electric Co-op, schools, church and the Post Office.

The witness recited a number of new residential subdivisions and of homes built therein and of loans to various lending agencies, giving the amounts over a period of four years.

George Webster, owner and operator of Polk County Abstract Company since 1960, who detailed a list of subdivisions and of sales of property and that 218 loans had been made at a total of $1,867,605.30 in 1962; 238 loans in 1963 for a total of $2,127,408.92 and 199 loans in 1964 through September for a total of $2,094,965.06. Some of the loans were personal. The witness further testified that 64 of the loans were made by Savings and Loan Associations located in Lufkin, Huntsville, Liberty, Orange, Woodville and in Houston aggregating $803,363.54, and that 147 loans were made by Mortgage Companies for a total of $2,081,949.97.

A list of Savings and Loan Associations in Texas counties with populations was exhibited, some with less than Polk County.

An economic index for the 1964–65 school year distributed by Texas Education Agency was offered and showed a decrease of 2.2% for Polk County and other counties over the State showed a greater decrease, all based on county assessed valuation scholastic population and total income.

The difficulties of making loans in the out-county companies and associations was the distance and the time required by both husband and wife to consummate a loan.

The witness went into detail as to loans made and the amounts thereof, and the Associations in Woodville were very few.

There was testimony from many other witnesses for the proponents which was before the Commissioner which we do not refer to herein.

Witnesses were presented in behalf of the opponents by Mr. Wheat of Woodville, a Director and counsel for Southeast Texas Savings and Loan Associations, who testified concerning the organization of his Association and that it was their intention to serve Polk County, and that three of their Directors were from Polk County.

The witness described the area within 50 miles of Woodville and the location of several Associations, and detailed the activity of his Association and introduced a list of Texas cities with one Savings and Loan Association and of the populations.

The witness testified that it was his conclusion or opinion based on the operation of the Woodville Association that the chartering and operation of an Association in Livingston would unduly injure his Association, and that there is no great public necessity for an Association in Livingston, and that he did not believe there was enough loan volume for the Association to make a profit.

On cross-examination Mr. Wheat testified that the Woodville Association was being operated in a profitable manner.

Mr. Bob Belt, Manager and Secretary of the Southeast Texas Savings and Loan Association since August 1, 1964, testified as to the operations of the Association month by month and of earnings; that his Association had two or three loans in Polk County.

We believe that as a matter of law that the record shows that there was introduced before the Commissioner ample and sufficient evidence to require the granting of the charter and that such showed a public need for the Association and that there would be a volume of business in the county in which the proposed Association will conduct its business as to indicate a profitable operation and will not unduly harm any existing Associations.

■ The desire on the part of intervenor Southeast Texas to exclude any other Association from Polk County is no real reason for the Commissioner's action in finding that the proposed Association would unduly harm appellee, Southeast Texas.

Gerst v. Cain, 388 S.W.2d 168, Sup.Ct.

There was no evidence that there was a possibility that the solvency of Southeast Texas would be endangered by the operation of the Livingston Association, or that less profit might be made than it was making.

The evidence reveals that Southeast Texas is a small well managed Association and is rendering a beneficial service to the residents of Tyler County, and some of the surrounding territory. No such service is being rendered to the people of Livingston and Polk County, and such can be rendered by the establishment and operation of the proposed Association.

■ The trial court did not err in admitting into evidence the record of the hearing before the Commissioner, the very record upon which the Commissioner made his determination.

The Commissioner did not object to the introduction of the record before him into evidence before the District Court.

The review provisions of the new Texas Savings and Loan Act provide in Section 11.12(4) that the Commissioner shall certify to the District Court the record of the proceedings, which the Commissioner is required to keep. Section 1.8, Rules and Regulations promulgated by the Building and Loan Section, set out the purpose of the hearing.

The new statute limits the review by the Court to the record upon which the decision was made.

The intervenor, Southeast Texas, made only a very general objection.

"MR. LONG: Your Honor, we have no objection to the introduction of the certificate and the record if it is merely for the purpose of showing compliance with the Statute and that is that the Commissioner shall certify to the District Court in which such petition is filed the record of the proceedings to which the petition refers. If it is introduced for that purpose, we have no objection, and we will stipulate that this is the record that has been certified by the Commissioner. However, if the certificate and the attached record is to be introduced for the truth of the matter stated therein, we will object on the ground that there is nothing in the Statute which makes the record before the Commissioner competent evidence to be received in the trial of this case by this Court; and this Court is well aware from previous experience in this area that records made before the various administrative bodies have never been held to be competent evidence. And in the absence of specific statutory provisions declaring it to be competent evidence to be used in the trial of this case, we will object to the receipt of it.

THE COURT: Well, I thought that a specific Statute was cited.

MR. LONG: Your Honor, the Statute to which counsel referred, the section of the Statute, is Section 11.12(b)

at the bottom of page 40 there in which it says, 'The review of any other Act shall be tried in court without a Jury in the same manner as civil actions generally, and all fact issues material to the validity of the Act, order, ruling or decision shall be determined at such trial on a preponderance of the competent evidence, but no evidence shall be admissible which was not adduced at the hearing on the matter before the Commissioner officially noted in the record of such hearing.'

Now, that speaks of evidence, competent evidence, adduced and not of the record that was made before the Commissioner. It will be our position that the record as such made before the Commissioner is not—and we will say in this case is full of hearsay and everything else and pertains to many matters which would not be competent evidence in the trial of a lawsuit—that it would not be the type of evidence which should be admitted into the record. So we would say that this Statute does not authorize the introduction of the record per se nor the trial of the case strictly upon the record per se as made up there.

When counsel finishes, of course, we will have argument to make about this entire proceeding that he proposes to use."

The record as introduced might not have been admissible against a specific objection, which would have enabled the judge to understand the precise question and to make an intelligent ruling and would afford the party offering the evidence an opportunity to remedy the defect if possible.

1 McCormick and Ray, Texas Law of Evidence, §§ 24 and 25.

■ While we believe that appeals from the act of the Commissioner in granting or denying savings and loan charters are to be tried under the substantial evidence rule, no reversible error was made in considering the case on the basis of the preponderance of evidence rule since the plaintiffs, appellees, herein assumed the burden of proof of showing that the order was not reasonably supported by substantial evidence. The trial court found that the plaintiffs had sustained their burden of proof by a preponderance of the evidence as well as under the substantial evidence rule.

■ We believe that the evidence before the Commissioner required the granting of a charter for the Association as proposed in Livingston, a town with a population of approximately 4000, and about 6000 persons reside within a five mile radius, and Polk County has a population of approximately 13,500 and surely the city is entitled under the record to a Savings and Loan Association.

The judgment of the trial court is affirmed.