James O. GERST et al., Petitioners,

v.

Orren L. NIXON et al., Respondents.

No. A–11357.

Supreme Court of Texas.

Nov. 30, 1966.

Rehearing Denied Feb. 8, 1967.

Waggoner Carr, Atty. Gen., Austin, Hawthorne Phillips, T. B. Wright, Paul W. Phy, John W. Fainter, Jr., Asst. Attys. Gen., for petitioner, James O. Gerst.

Joe R. Long, Austin, for petitioner, Southeast Texas Savings & Loan Assn.

Heath & Davis, Dudley D. McCalla, with firm; Alvis & Carssow, Austin, for respondents.

NORVELL, Justice.

On November 19, 1964, the petitioner James O. Gerst, Savings and Loan Commissioner of Texas, refused the application for a charter filed by respondents Orren L. Nixon, J. R. McDonald, Thomas I. Fetzer, Benjamin C. Lively, J. M. Windham and Sidney R. Smith, who had been selected as members of the board of directors of a proposed savings association to be known as Livingston Savings and Loan Association and located at Livingston, Polk County, Texas.

The refusal of the application by the Commissioner was based upon his negative findings relating to Vernon's Ann.Tex. Stats., art. 852a § 2.08(3), (4). These provisions read as follows:

"Sec. 2.08. The Commissioner shall not approve any .charter application unless he shall have affirmatively found from the data furnished with the application, the evidence adduced at such hearing and his official records that: * * *

"(3) there is a public need for the proposed association and the volume of business in the community in which the proposed association will conduct its business is such as to indicate profitable operation;

"(4) the operation of the proposed association will not unduly harm any existing association."

Among other holdings, the trial court concluded as a matter of law that the negative findings of the Commissioner were not reasonably supported by substantial evidence and hence his action was null and void. This judgment was affirmed by the Court of Civil Appeals, 399 S.W.2d 845.

We granted the Commissioner's application for writ of error which contains a sole point challenging the holdings of the courts below that the Commissioner's negative findings were not reasonably supported by substantial evidence. We also granted the application of Southeast Texas Savings and Loan Association located at Woodville, Tyler County, Texas, the intervenor in the trial court, which here seeks to support the Commissioner's order. Such intervenor as petitioner here, in addition to asserting that the Commissioner's order is reasonably supported by substantial evidence, contends by its second and third points that the Court of Civil Appeals erred in failing to hold that art. 852a § 11.12 (5) (b) is unconstitutional insofar as it requires a redetermination by the trial court of the fact issues material to the validity of the Commissioner's order upon a preponderance of the evidence basis, and that the trial court erred in receiving in evidence the record of the hearing conducted by the Commissioner. In this case, we have no question of procedural due process.

We do not understand that the Court of Civil Appeals has held that the preponderance of the evidence standard has application to this case, but intervenor-petitioner's second and third points raise questions of method and procedure relating to a judicial review of orders of the Savings and Loan Commissioner under section 11.12 (5) (b) of the Savings and Loan Act which calls for our determination and should be

first discussed before we consider the point raised by the Commissioner's application.

The record in this case is unusual because of the trial judge's doubt as to the validity of certain provisions contained in the Texas Savings and Loan Act relating to judicial review of orders entered by the administrative agency. Art. 852a § 11.12 provides in part:

*"Judicial Review*

"Sec. 11.12. Any person with an interest in the subject matter thereof who is dissatisfied with any act, order, ruling or decision of the Commissioner taken or made, or with any rule or regulation promulgated by the Commissioner and the Building and Loan Section of the Finance Commission in connection with the administration of this Act, may secure judicial review thereof in the following manner: * * *

"(5) Trial. (a) The review of an order issued under Section 8.14[1] of this Act shall be tried in the same manner as civil actions generally and the complaining party shall be entitled to a jury. The trial shall be governed by the rules of civil procedure and all fact issues material to the validity of such order shall be determined de novo on the preponderance of the evidence and the substantial evidence rule shall not apply. Any relevant and competent evidence shall be admissible for or against the order.

"(b) The review of any other act, order, ruling or decision of the Commissioner or of any rule or regulation shall be tried by the court without a jury in the same manner as civil actions generally and all fact issues material to the validity of the Act, order, ruling, decision or rule or regulation complained of shall be redetermined in such trial on the preponderance of the competent evidence,

but no evidence shall be admissible which was not adduced at the hearing on the matter before the Commissioner or officially noticed in the record of such hearing."

The trial judge made findings on a preponderance of the evidence basis which were contrary to those made by the Commissioner, that is, the judge found that there was a public need for the proposed association, that there was a likelihood that its operations would be successful and that the operation of such proposed association would not unduly harm any existing association. Also, as above stated, the trial judge concluded as a matter of law that the Commissioner's negative findings under art. 852a § 2.08(3), (4) were not reasonably supported by substantial evidence. It was the obvious purpose of the district judge to decide the issues upon a preponderance of the evidence basis and also in accordance with the substantial evidence rule so that an appellate court could in all probability dispose of the case or remand the same to the Commissioner for further proceedings, art. 852a § 11.12(6), and avoid a remand to the trial court.

The provision for judicial review which purports to vest a court with the power to redetermine upon a preponderance of the evidence basis the issues set forth in art. 852a § 2.08(3), (4) is unconstitutional because it is violative of the separation of powers provision of the Texas Constitution which provides:

"The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any

1. This section relates to the removal of directors, officers and employees of sav-

ings and loan associations under certain prescribed conditions.

power properly attached to either of the others, except in the instances herein expressly permitted." (Art. 2 § 1, Texas Constitution, Vernon's Ann.St.).

■■■ The granting or withholding of a permit, certificate or authority to do business in a statutorily regulated commercial endeavor is an administrative function and under the constitutional provision above quoted, such function cannot be delegated to the judiciary. The judicial inquiry in regard to such matters is restricted to the method employed by the administrative agency in arriving at its decision. By way of example, it is the province of the administrator to determine whether there is a public need for the proposed association. The administrator having determined that there is no public need for such association, the judicial question then arises as to whether the decision of the administrator is fraudulent,[2] capricious or arbitrary. See, Davis v. City of Lubbock, 160 Tex. 38, 326 S.W.2d 699 (1959); Chemical Bank & Trust Co. v. Falkner, 369 S.W.2d 427 (Tex.Sup.1963). The so-called substantial evidence rule may be more accurately described as a test rather than a rule. When properly attacked, an arbitrary action cannot stand and the test generally applied by the courts in determining the issue of arbitrariness is whether or not the administrative order is reasonably supported by substantial evidence. In the Trem Carr case (Railroad Commission v. Shell Oil Company, 139 Tex. 66, 161 S.W.2d 1022, 1942), the order of a regulatory body, namely, the Railroad Commission, was likened to that of a commissioners' court or a board of school trustees and it was held that the issue was not whether the regulatory agency came to the proper fact conclusion on the basis of conflicting evidence, but "whether or not it acted arbitrarily and without regard to the facts". The court then stated that one of the tests applicable to determining the asserted arbitrary nature of the administrative act was whether or not the action of the agency in reaching the disputed conclusion was reasonably supported by substantial evidence.

The rule thus stated has been consistently followed. In the recent case of Gerst v. Cain, 388 S.W.2d 168 (Tex.Sup.1965), this court said:

"The discretion conferred on the Commissioner to grant or refuse charters by Arts. 881a–2 and 881a–3, Vernon's Texas Civil Statutes, was not an unbridled discretion; his findings could not be arbitrary or capricious, but must have had support in substantial evidence. Phillips v. Brazosport Savings and Loan Ass'n, Tex.Sup., 366 S.W.2d 929; Gibraltar Savings and Loan Ass'n v. Falkner, Tex.Sup., 371 S.W.2d 548; Benson v. San Antonio Savings Ass'n, Tex.Sup., 374 S.W.2d 423."

■■■ In the usual judicial review of an administrative order in Texas, the issue is not whether the regulatory agency actually heard and considered sufficient evidence to reasonably support its action, but whether at the time the questioned order was entered there then existed sufficient facts to justify the agency's order. The evidence actually heard by the agency is not material but the parties are given a full opportunity in their appearance before a judicial body "to show that at the time the order was entered there did, or did not, then exist sufficient facts to justify the entry of the same". Cook Drilling Company v. Gulf Oil Corporation, 139 Tex. 80, 161 S.W.2d 1035 (1942).

This rule of procedure has application to judicial review when the statute allowing such review expressly so provides; or the statute, while allowing judicial review, is silent as to the method or when in the absence of express statutory provision, a judicial review is allowed because of constitutional considerations. See, Brazosport Savings & Loan Association v.

---

2. There is no issue of fraud in this case.

American Savings & Loan Association, 161 Tex. 543, 342 S.W.2d 747 (1961); Chemical Bank & Trust Company v. Falkner, 369 S.W.2d 427 (Tex.Sup.1963).

 Art. 852a § 11.12 relating to judicial review of an act, order, ruling or decision of the Savings and Loan Commissioner does not provide for the application of the tests or procedures usually employed in determining the validity of an administrative order. Part of subsection (5) (b) of the section may not be applied to subsections (3) and (4) of Section 2.08 of the Act because of constitutional considerations. However, the Act contains a severability clause and hence the partial invalidity of a portion of a paragraph thereof does not necessarily render such paragraph void in toto.[3]

Section 11.12, subsection (5) (b) with the invalid portion eliminated reads as follows:

"The review of any other act, order, ruling or decision of the Commissioner or of any rule or regulation shall be tried by the court without a jury in the same manner as civil actions generally,[4] but no evidence shall be admissible which was not adduced at the hearing on the matter before the Commissioner or officially noticed in the records of such hearing."

Upon the trial respondents introduced the record of the hearing held by the Commissioner and the matters officially noticed by him. Respondents' position was stated at the beginning of the trial when the record of the Commissioner's hearing was offered:

"[T]his is the first case to be heard under the Appeal Provisions of the so-called new Savings and Loan Act which became effective in January of 1964; and the Appeal Provisions provide that the record heard before the Commissioner and the matters officially noticed by him in such record are to be the basis for Courts' re-determination of the issues which were before the Commissioner."

The Assistant Attorney General appearing on behalf of the Commissioner stated his position as follows:

"The Defendant would take the position, and I believe, by inference, it has taken that position in its original answer that the provisions relating to a preponderance of the evidence are unconstitutional in this Statute * * *.

"I think that the purpose of this Act is probably to insure that the Commissioner will have a full presentation of the Proponents and Opponents concerning an Application for Charter and, certainly, that he would be best informed and be able to render the best decision possible. * * *

"Also, I think, as a practical matter, it would be unnecessary (to call the witnesses who had appeared at the hearing before the Commissioner) since the testimony taken at the hearing was taken under oath and before a reporter there; and, of course, Your Honor is qualified to sift out the immaterial and incompe-

---

3. The severability clause of the Act provides:
 "If any part, Section, Subsection, paragraph, sentence, clause, phrase, or word contained in this Act shall be held by the courts to be unconstitutional, such holding shall not affect the validity of the remaining portions of the Act, and the Legislature hereby declares that it would have passed such remaining portions despite such invalidity."

4. The invalid portion of the section appears between the words "generally" and "but" and reads: "and all fact issues material to the validity of the Act, (sic) order, ruling, decision or rule or regulation complained of shall be redetermined in such trial on the preponderance of the competent evidence, * * *."

tent evidence that may have filtered its way into the record."

As above noticed, the Attorney General asserts as his sole proposition that the Commissioner's order is reasonably supported by substantial evidence. The intervenor-petitioner, Southeast Texas Savings & Loan Association, recognizes that Section 11.12 of the Act provides for an appeal, but strongly urges that subsection (5) (b) of said article must fall in its entirety and that there is no valid statutory authority for admitting the record of the Commissioner's hearing in evidence. It is argued that the provision in subsection (5) (b) that the review shall be tried in the same manner as civil cases generally cannot be reconciled with the provision that no evidence shall be admissible which was not adduced at the Commissioner's hearing. From these premises it is concluded that Section 11.12 judicial reviews are controlled by the usual rule stated in Cook Drilling Company v. Gulf Oil Corporation, 139 Tex. 80, 161 S.W.2d 1035 (1942), and numerous subsequent cases, namely, that whether the Commissioner actually heard sufficient evidence to sustain the order is immaterial, but that the true issue is whether or not there was in existence at the time of the Commissioner's hearing, sufficient facts to reasonably support the order. In other words, it is said that because of the total invalidity of subsection (5) (b), the judicial review is controlled by the procedure generally employed in this state to determine whether or not an administrative order is arbitrary. It is said by way of argument that at the Commissioner's hearing very little or no attempt was made to comply with the rules of evidence, that the record contains numerous inadmissible statements, hearsay declarations and the like, and that a consideration of the record of the Commissioner's hearing cannot be considered as constituting a trial "in the same manner as civil cases generally". The end result of intervenor-petitioner's argument is that the burden of proof being upon respondents, they necessarily fail because the record of the Commissioner's hearing is not admissible in evidence and is in law "no evidence".

 There is force in intervenor-petitioner's argument. However, it is within the legislative prerogative to specify the kind and nature of review to be employed by the courts so long as constitutional safeguards and requirements are not transgressed. The Legislature may provide that the basis of judicial review when arbitrariness is asserted shall be the record made at the hearing before the administrative agency rather than upon evidence produced originally in open court. We do not construe the phrase, "tried by the court without a jury in the same manner as civil cases generally" as adopting in toto all procedures that are generally applicable to the ordinary judicial trial.

Section 11.11 relates to hearing procedures before the Commissioner. It provides that opportunity shall be afforded any interested party to respond and present evidence and argument on all issues involved in the hearing and that, upon written request, the Commissioner shall keep a formal record of such hearing. The judicial review section provides that after the filing of a petition in the District Court seeking a judicial review of an administrative order, the Commissioner within the time prescribed for the filing of an answer "shall certify to the District Court in which such petition is filed the record of the proceedings to which the petition refers." Section 11.12(4).

 These statutory provisions seem to contemplate that the record of the Commissioner's hearing shall be considered by the District Court. This view is borne out by the administrative construction of the Act as evidenced by the rules applicable to the Commissioner's hearing which provide that the Commissioner shall secure the services of a competent reporter "who shall keep a formal record of the proceedings of any hearing held under the pro-

visions of the Texas Savings and Loan Act"; that the purpose of such hearing is "to accumulate a record of all pertinent information, testimony, records, reports and other data in favor of or opposed to the application upon which the Commissioner shall make his determination of whether the application should be granted or denied"; and that if the Commissioner desires to base his decision on any evidence disclosed by an investigation which is not a part of the official record, "he is to make the results of such investigation a part of the official record of the hearing and permit all parties to the hearing an opportunity to be heard in respect thereto by reopening the hearing if necessary".

 The above quoted statutory provisions, together with the rules promulgated thereunder, demonstrate that a hearing before the Savings and Loan Commissioner is a different proceeding from the informal hearing considered by this Court in Cook Drilling Co. v. Gulf Oil Corporation, 139 Tex. 80, 161 S.W.2d 1035 (1942), wherein the validity of an order granting a permit to drill an oil well as an exception to spacing rule 37 was con-

sidered. The requirement that the Commissioner file a record of the proceedings had before him with the District Court clearly implies that such record is to be considered by the court. While the last phrase contained in Section 11.12, subsection (5) (b), could have been more artfully worded, it seems reasonably clear that when considered in connection with other portions of the Act, the purpose of the words, "no evidence shall be admissible which was not adduced at the hearing on the matter before the Commissioner or officially noticed in the record of such hearing", was to adopt the rule that the Commissioner's order is to stand or fall upon the evidence adduced and matters noticed at the Commissioner's hearing. It is from this record that the District Judge is to determine whether or not the Commissioner's order is arbitrary, i. e., whether it is reasonably supported by substantial evidence. The circumstance that the record of the Commissioner's hearing contains hearsay or other species of evidence deemed unreliable is a matter for the consideration of the trial judge in determining the issue of "substantial evidence".[5]

5. Respondents call our attention to the Illinois Administrative Review Act which in part provides (Ill.Rev.Stat.1965, Chapter 110, § 272):
 "Pleadings and record on review.
 "(a) Complaint. The complaint shall contain a statement of the decision or part thereof sought to be reviewed. It shall specify whether the transcript of evidence if any, or what portion thereof, shall be filed by the agency as part of the record. Upon motion of any defendant, or upon its own motion, the court may require of the plaintiff a specification of the errors relied upon for reversal.
 "(b) Answer. Except as herein otherwise provided, the administrative agency shall file an answer which shall consist of the original or a certified copy of the entire record of proceedings under review, including such evidence as may have been heard by it and the findings and decisions made by it."
 Section 274 of the Act reads as follows:

"Every action to review any final administrative decision shall be heard and determined by the Court with all convenient speed. The hearing and determination shall extend to all questions of law and of fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie, true and correct."
 As to the effect of these provisions, it was said in a Survey of Illinois Law, 1951–52, 31 Chicago-Kent Law Review 1, 85 that:
 "Even the most cursory reading of that statute should, however, make it obvious that it contemplates no more than a review of the record formulated during the administrative hearing, for the statute expressly states that the record

As pointed out by the Court of Civil Appeals, the Commissioner found that the prerequisites, where applicable, set forth in Sections 2.02, 2.03, 2.04, 2.05 and 2.06 of the Act had been complied with; that the proposed Articles of Incorporation were in proper form and that those named as initial directors in such articles were fit and proper persons to direct the affairs of the proposed Livingston Savings and Loan Association, but made negative findings as to subsections (3) and (4) of Section 2.08. In Gerst v. Cain, 388 S.W.2d 168 (Tex.Sup.1965), we considered art. 881a-2, Vernon's Ann.Tex.Stats. (repealed by Acts 1963, 58th Leg., p. 269, ch. 113, § 2, the 1963 Savings and Loan Act, art. 852a, Vernon's Ann.Tex.Stats.), which required that before granting a charter, the Commissioner must affirmatively find that (1) the public convenience and advantage would be promoted by allowing the proposed building and loan association to be incorporated and engaged in business, and that (2) the population in the neighborhood of the place of location and in the surrounding country afforded a reasonable promise of adequate support for the association. The Commissioner in the Cain case made negative findings upon these issues and refused to grant a charter. We ruled that before the judgments of the trial court and the Court of Civil Appeals setting aside the Commissioner's order could be affirmed, it was necessary to hold that the negative findings made by

the Commissioner "are not supported by substantial evidence, and that the evidence so conclusively required affirmative findings that the refusal to make them was arbitrary or capricious".

The substantial procedural change in this rule by the 1963 Act was to make the record of the Commissioner's hearing rather than evidence produced originally in court the basis from which it must be determined if the evidence conclusively required affirmative findings relating to the matters mentioned in subsections (3) and (4) of Section 2.08. These statutory provisions require findings that: (a) there is a public need for the proposed association; (b) the volume of business in the community in which the proposed association will conduct its business is such as to indicate that the association may be profitably operated; and (3) the operation of the proposed association will not unduly harm any existing association.

■ We think the words "public need" as used in Section 2.08(3) have the same meaning as the words "public necessity" as used in the Texas Banking Code of 1943, l. c. art. 342–305, Vernon's Ann.Tex. Stats., that is, a substantial or obvious community need for the proposed association in the light of attendant circumstances, as distinguished from a mere convenience on the one hand and an absolute or indispensable need on the other.[6]

is to be filed with the court and prohibits the introduction of new evidence."

In Parker v. Department of Registration and Education, 5 Ill.2d 288, 125 N. E.2d 494 (1955), the Supreme Court of Illinois said:

"The reviewing court is limited to a consideration of the record to determine if the findings and orders of the administrative agency are against the manifest weight of the evidence."

6. In Chimney Rock National Bank of Houston v. State Banking Board of Texas, 376 S.W.2d 595 (Tex.Civ.App.1964, no writ), the Court of Civil Appeals followed the definition or exposition of the

term "public necessity" set forth in Moran v. Nelson, 322 Mich. 230, 33 N.W.2d 772 (1948), wherein the Supreme Court of Michigan said:

"[S]ince the primary function of banking facilities involves the welfare and convenience of the portion of the public concerned, it would seem reasonably to follow that 'necessity' as used in the controlling statute was not intended by the legislature which enacted the law to mean absolute or indispensable need. Instead, we are of the opinion that the meaning or import of 'necessity' as employed in the statute is a substantial or obvious need justifying the chartering of a new bank in view

We are in general accord with the holdings of the Court of Civil Appeals upon the issues of public need, likelihood of success and non-injury to an existing association. We need not repeat the evidence detailed in the intermediate court's opinion other than by way of summary. The record of mortgages and liens for Polk County show that a total of 655 loans aggregating $6,089,979.28 on real estate were made for the years 1962, 1963 and up to and including September of 1964. Only 64 of these loans were made by savings and loan associations located in Lufkin, Huntsville, Liberty, Orange, Woodville and Houston. This number percentage-wise is well below the national average. There was uncontroverted testimony as to the difficulties experienced and extra expense incurred by residents of Polk County in obtaining loans from non-resident institutions. It was stated by the Supreme Court of Mississippi in Planters Bank v. Garrott, 239 Miss. 248, 122 So.2d 256 (1960), that "mere convenience is not sufficient to satisfy the statutory requisite of 'necessity'. But, * * * when supplemented by proof of facts and circumstances which, * * * are persuasive of 'necessity', it is proper to take into consideration testimony as to the element of convenience". The evidence shows an existing mortgage market; that the proposed association is properly capitalized; and that it would be controlled by competent personnel. Upon the issue of injury to an existing association, we think the case is largely controlled by Gerst v. Cain, 388 S.W.2d 168 (Tex.Sup.1965). It appears that there is a strong probability that a dam may be constructed on the Trinity River near Livingston and that a paper mill and other industrial plants may be located in Polk County. This would as a matter of course result in increasing business and house building activities in the Livingston area. Polk County adjoins Tyler County and the intervenor-petitioner, Southeast Texas Savings & Loan Association, is located at Woodville, the county seat of Tyler County, which is 38 miles from Livingston. Should business activity in the Livingston area and Polk County increase, an additional opportunity for profitable operations by the Woodville association would become available and there is evidence that Polk County is regarded as an area of expansion by such association. These expectations of profit would be diminished to some extent by operations of a new savings and loan association located at Livingston. It appears, however, that during the years 1962, 1963 and the first nine months of 1964, the Polk County area had not been developed as a territory of appreciable economic importance to Southeast Texas Savings and Loan Association (Woodville) [7]. In substance, the "injury" resulting to Southeast Texas by the granting of a charter to a Livingston association would be related solely to competition for future business. The probable slowing down of the rate of growth of an existing association because of a lessened opportunity to obtain business in a prospectively developing area because of competition cannot be regarded as an injury to such existing association. In Gerst v. Cain, 388 S.W.2d 168 (Tex.Sup.1965), this court said:

"Competition is the lifeblood of a free enterprise economic system. It is only because savings and loan associations are

---

of the disclosed relevant circumstances."

The Moran case has also been followed by the Supreme Court of Mississippi. In Planters Bank v. Garrott, 239 Miss. 248, 122 So.2d 256 (1960), the court in speaking of *Moran*, said:

"We agree with the statement made by the Michigan Court in its opinion in the Moran case, that the meaning or import of 'necessity', as the word is used in a statute such as we have here,

is 'a substantial or obvious need justifying the chartering of a new bank in view of the disclosed relevant circumstances.' "

7. Insofar as Polk County is concerned, it appears that in 1962, Southeast Texas made only three loans aggregating $22,000.00. In 1963, it made one $8,000.00 loan and during the first nine months of 1964, it made no loans.

affected with a public interest, Brazosport Sav. & L. Ass'n v. American Sav. & L. Ass'n, 161 Tex. 543, 342 S.W.2d 747, that they are protected from *undue* injury brought about by *excessive* competition. Southwestern Sav. & L. Ass'n of Houston v. Falkner, 160 Tex. 417, 331 S.W.2d 917. There is no evidence here that the chartering of Metropolitan would provide *excessive* competition for existing associations which would result in undue injury to them. * * *

"We doubt that proof of nothing more than that chartering a new association will make it 'more difficult' for an existing new association to increase its savings to 'a satisfactory' level can, under any circumstances, constitute substantial evidence to support a finding of *undue* injury to the association." [8]

The judgments of the courts below are affirmed.

## ON REHEARING

 Southeast Texas Savings and Loan Association asserts that the statutory and rules provisions governing hearings before the Savings and Loan Commissioner are defective as no adequate procedure for compelling the attendance of witnesses or securing testimony by means of deposition is provided for. There is no showing that the lack of witness attendance or discovery procedures, if any there be, operated to the prejudice of said protesting association.

8. A comment relating to judicial review of administrative decisions appearing in 115 U. of Pennsylvania L.Rev. 40 (1966) makes the following pertinent observations with reference to the Federal Administrative Procedure Act:

"In order to give a reasonable meaning to section 10(e) (of the Administrative Procedure Act, 5 U.S.C. § 1009), and in light of legislative reluctance to exclude judicial review, the most rational construction of section 10(a) would seem to be that once a question has been committed to agency discretion, the only ground for reversal would be an agency decision which is 'arbitrary', or in other words, an abuse of discretion.

"The question of what constitutes abuse of discretion, however, is not an easy one. Clearly the existence of discretion in an agency demands judicial deference to some agency decisions which the court would have made differently in the first instance. 'Abuse of discretion', then, must mean more than that the agency, after considering and weighing all the relevant facts, struck a balance different from that which the court would have reached. On the other hand, administrative agencies are vested with discretion by Congress primarily because of their expected expertise in divining and effectuating congressional policy. The agency's expertise is probably only of value so long as it weighs those considerations, and only those considerations, which Congress intended that it take into account in effectuating the legislative policy. Thus, if an agency were to include within its consideration irrelevant factors, or if it were to exclude a factor which Congress intended it to consider in enforcing federal policy, it would have 'abused' its discretion, because: 1) the agency would no longer be acting under the congressional mandate; and 2) its value as an expert body—the reason for deference by the courts and for congressional trust—would be lost.

"A third way in which an agency might abuse its discretion would be to give unreasonable weight to one or more relevant factors. Congress presumably did not, and possibly could not, delegate authority to an agency to act arbitrarily or capriciously. Thus, if an agency reached a completely unreasonable result after weighing the relevant facts, the court should set that finding aside. Admittedly it is a delicate task for a court to decide that an agency acted arbitrarily despite the fact that it purported to have weighed all those considerations, and only those considerations, which are relevant to the congressional purpose; but the task is probably one which the courts must be willing to perform if the vast advantages of administrative agencies are *not to be lost* through misuse. Because the balance is so delicate, however, the courts *should, and probably do, avoid striking down agency action unless they feel competent to find that the agency has clearly acted unreasonably, and thereby 'abused its discretion'."*

Apparently it developed all the facts and circumstances it deemed pertinent to the inquiry before the Commissioner. It is in no position to contend that they were prejudiced because of a lack of statutory or rule-making provisions empowering the Commissioner to compel the attendance of witnesses, secure deposition testimony or enforce discovery. The present record does not present a question of procedural due process and we decline to rule upon a purely hypothetical case.

The motions for rehearing are overruled.