Jay Sandon COOPER, Appellant,

v.

TEXAS WORKFORCE COMMISSION
and City of Dallas, Texas,
Appellee.

No. 05–10–00513–CV.

Court of Appeals of Texas,
Dallas.

June 8, 2011.

Jay Sandon Cooper, Plano, pro se.

Jennifer L. Carter Huggard, Barbara E. Rosenberg, Janice S. Moss, Dallas City Attorney's Office, Dallas, Anthony Aterno, Office of the Attorney General, Austin, for Appellee.

Before Justices O'NEILL, FRANCIS, and MYERS.

## OPINION

Opinion By Justice MYERS.

Jay Sandon Cooper appeals the denial by the Texas Workforce Commission (TWC) of unemployment benefits following his involuntary discharge from the City of Dallas, Texas. In his sole issue on appeal, appellant contends the trial court erred in not awarding him unemployment benefits. We affirm the trial court's judgment.

## BACKGROUND

In April 2007, after twenty-three years as a police officer for the City, appellant was terminated from his position with the City's police department. Appellant applied for unemployment benefits, which were approved in May 2007 for $364 per week. Appellant also applied to receive pension payments under the Dallas Police & Fire Pension System based on his work for the City. Appellant received his first monthly pension payment of $1959.63 on August 1, 2007. On August 20, 2007, the TWC reduced appellant's unemployment

benefits to zero because his pension, pro-rated to a weekly amount of $452 per week, exceeded his unemployment benefits. After exhausting administrative review of his benefits claim, appellant sought judicial review in district court. The trial court held a bench trial and affirmed the TWC's decision, determining it was supported by substantial evidence.

## STANDARD OF REVIEW

A party "aggrieved by a final decision" of the Texas Workforce Commission may obtain judicial review of that decision. *See* TEX. LAB.CODE ANN. 212.201 (West 2006). Judicial review is "by trial de novo based on the substantial evidence rule." *Id.* § 212.202. Under this hybrid review, the trial judge "conducts an evidentiary hearing for the limited purpose of determining 'whether at the time the questioned order was entered there then existed sufficient facts to justify the agency's order.'" *Bd. of Tr. of Big Spring Firemen's Relief & Ret. Fund v. Firemen's Pension Comm'r*, 808 S.W.2d 608, 612 (Tex.App.-Austin 1991, no writ) (quoting *Gerst v. Nixon*, 411 S.W.2d 350, 354 (Tex.1966)); *see Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex.1984) ("The reviewing court must inquire whether the evidence introduced before it shows facts in existence at the time of the administrative decision which reasonably support the decision."). While the trial judge "must hear and consider evidence to determine whether reasonable support for the administrative order exists," the "agency itself is the primary fact-finding body, and the question to be determined by the trial court is strictly one of law." *Brinkmeyer*, 662 S.W.2d at 956. The appellate court reviews the trial court's judgment. *Potts v. Tex. Emp't Comm'n*, 884 S.W.2d 879, 882 (Tex.App.-Dallas 1994, no writ).

In construing a statute, a reviewing court should determine and give effect to the legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000); *Jones v. State*, 175 S.W.3d 927, 930 (Tex.App.-Dallas 2005, no pet.). If the meaning of the statutory language is unambiguous, a reviewing court adopts, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex.1999); *Jones*, 175 S.W.3d at 930. If a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity. *Fitzgerald*, 996 S.W.2d at 866; *Jones*, 175 S.W.3d at 930. When we interpret a code enacted by the legislature, we read words and phrases in context and construe them according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a); *see Jones*, 175 S.W.3d at 930. Words are given their ordinary meaning. *See Fitzgerald*, 996 S.W.2d at 866; *Jones*, 175 S.W.3d at 930.

## PENSION PAYMENTS

A person receiving a pension or other periodic retirement pay based on the person's previous work is disqualified from receiving unemployment benefits. TEX. LAB.CODE ANN. § 207.050(a) (West 2006). However, if the pension payment for the benefit period is less than the unemployment benefits the person would otherwise receive, the person "is entitled to receive benefits for the benefit period that are reduced by the amount of the" pension payment. *Id.* § 207.050(c). But, "[i]f a periodic payment described by Subsection (a) is received by an individual under the federal Social Security Act, the commission shall consider the individual's contribution and may not reduce the weekly benefit amount." *Id.* § 207.050(b). Appellant asserts the TWC erred in disqualifying him

from receiving benefits because he received his pension "under the federal Social Security Act."

During the TWC hearing, appellant testified that "the Dallas Police & Fire Pension System is an independently run organization that has qualified under the Social Security Act to provide the same benefits as Social Security" and "is authorized by the Federal Social Security Act." He also testified that the pension plan was "a plan organized under the Social Security Act." By denying appellant's claim for benefits, the TWC implicitly rejected appellant's assertion that he received the pension payments "under the federal Social Security Act."

On appeal, appellant argues the pension system "is a plan exempt under Section 207.050(b), Texas Labor Code, because it is established pursuant to 42 U.S.C. § 418 ..., and specifically subsections (d)(5)(a)[, (g)] and (*l*)" and 20 C.F.R. 404.1212. "Therefore, Appellant's receipt of pension distributions cannot be the basis for disqualification of unemployment compensation."

These statutes concern extending the Social Security system to the employees of states and their political subdivisions; they do not purport to make municipal pension payments be payments under the Social Security Act. The Social Security Act provides that employees of a state or political subdivision are not automatically included in the coverage of the Social Security system. *See* 42 U.S.C.A. § 410(a)(7) (West Supp. 2010). Under 42 U.S.C. § 418, the state or political subdivision can enter into an agreement with the Commissioner of Social Security to extend the Act's insurance to its employees' services. *Id.* § 418(a), (d)(3), (g) (West Supp. 2010). Although the services of policemen and firemen are not subject initially to an agreement between a state and the Com-

missioner, *id.* § 418(d)(5)(A), (d)(8)(D), the agreement may be modified to include the services of policemen and firemen, *id.* § 418(*l*). The regulation appellant cites, 20 C.F.R. § 404.1212, discusses the method for providing coverage under the Social Security system for police officers and firefighters who are covered by another retirement system. In this case, there is no evidence of any agreement to include the City's employees in the Social Security system or, if there was such an agreement, that it was modified to include the City's policemen. Furthermore, none of these statutes or the regulation make a payment to a police officer under a state or municipal pension a payment "under the federal Social Security Act."

Appellant also argues substantial evidence supports his argument that his receipt of pension payments did not disqualify him from unemployment benefits because he testified without refutation that the pension plan was "qualified" and "authorized" under the Social Security Act. The statutory and regulatory provisions he cited for his assertion that the plan was "qualified" and "authorized" do not purport to "qualify" or "authorize" pension plans. However, regardless of whether the pension plan was "qualified" or "authorized," its payments were not "under the federal Social Security Act."

Appellant's argument that the payments from the Dallas Police & Fire Pension System are exempt from the disqualification of Texas Labor Code section 207.050(a) lacks merit.

## PERSONAL CONTRIBUTIONS

■ Appellant next argues that section 207.050(a)'s disqualification provision should not apply until he receives pension payments equal to his personal contributions to the pension fund, $23,377.23, citing 26 U.S.C.A. § 3304 (West Supp. 2010).

Section 3304(a)(15)(A) requires state unemployment compensation statutes under the Federal Unemployment Tax Act to reduce benefits payments by the amount of any pension payment. The statute also provides, "the. State law may provide for limitations on the amount of any such a [sic] reduction to take into account contributions made by the individual for the pension, retirement or retired pay, annuity, or other similar period payment." 26 U.S.C.A. § 3304(a)(15)(A)(ii). Section 3304(a)(15)(A)(ii) is permissive, and it does not require the state statutes to take personal contributions to a pension into account. The Texas Labor Code clearly disqualifies a person who receives pension payments exceeding the amount of the unemployment benefits. *See* TEX. LAB.CODE ANN. § 207.050(a). The Texas statute does not exempt pension payments until they exceed the individual's contributions to the pension fund.

Appellant also asserts the pension payments up to the amount of his personal contributions should not disqualify him from unemployment benefits because "[c]omparatively, no person would be denied unemployment benefits because they had access to personal savings." However, regardless of whether pension payments are the equivalent of withdrawals from personal savings accounts, appellant's argument is contrary to the clear language of the statute. The Texas statute makes no exception to the disqualification from unemployment benefits for pension payments up to the amount of the person's contributions to the pension plan.

## BENEFIT PERIOD

Appellant next argues the monthly pension payment should not disqualify him from receiving weekly unemployment benefits during the weeks that he does not receive a pension payment. Thus, appellant argues, the TWC erred in prorating his pension payment to a weekly amount to determine that it exceeded his weekly unemployment benefits amount.

Appellant's argument is based on the wording of section 207.050(a):

> Except as provided by Subsection (b), an individual is disqualified for benefits for a benefit period for which the individual is receiving or has received a governmental or other pension, retirement or retired pay, an annuity, or any other similar periodic payment based on the previous work of the individual and reasonably attributable to the benefit period.

TEX. LAB.CODE ANN. § 207.050(a). The code defines "benefit period" as "the seven consecutive calendar days ending at midnight on Saturday and is the period for which entitlement to benefits is determined." *Id.* § 201.011(4).

Appellant's argument depends upon the monthly pension payment being "reasonably attributable" only to the benefit-period week in which it was received. Nothing in the record indicates that to be the case. The fact appellant received his pension payments once per month indicates that the payment is "reasonably attributable" to the entire month and to all benefit-period weeks falling within the month. Accordingly, the TWC did not err in prorating appellant's monthly pension payment to a weekly amount to compare to his weekly unemployment benefits.

## CONCLUSION

The trial court did not err in affirming the TWC's decision and in failing to award appellant unemployment benefits. We overrule appellant's issue on appeal.

We affirm the trial court's judgment.