James O. GERST, Savings & Loan Commissioner of Texas, Appellant,

v.

B. F. ADAM et al., Appellees.

No. 11407.

Court of Civil Appeals of Texas.

Austin.

May 25, 1966.

Rehearing Denied June 15, 1966.

Waggoner Carr, Atty. Gen., Hawthorne Phillips, First Asst. Atty. Gen., T. B. Wright, Executive Asst. Atty. Gen., Paul W. Phy and John W. Fainter, Jr., Asst. Attys. Gen., Austin, for appellant.

Clark, Thomas, Harris, Denius & Winters, Conrad Werkenthin, Mary Joe Carroll, Austin, for appellees.

PHILLIPS, Justice.

This is a suit brought by appellees, B. F. Adam et al. against appellant, James O. Gerst, Savings and Loan Commissioner of Texas. The suit was filed in the District Court of Travis County, Texas, seeking to set aside an order of appellant issued on April 9, 1965 denying appellees' application for a savings and loan charter. Appellant's order had been issued subsequent to a hearing held on March 10, 1965. Appellees' appeal from the order denying the application was pursuant to the provisions of the Texas Savings and Loan Act, Article 852a, Section 2.08, R.C.S.

After a trial to the court without a jury, the court entered its judgment on October 26, 1965 setting aside appellant's order and remanded the case to appellant for proper action not inconsistent with his judgment.

We affirm.

Appellant is before us on two points of error, namely, that of the trial court in overruling appellant's motion in limine and allowing the introduction of evidence at the trial of this cause which was not evidence adduced at the public hearing held on March 10, 1965, concerning appellees' application for a savings and loan charter; the error of the court in not holding the order of April 9, 1965, entered by appellant denying a savings and loan charter to appellees was reasonably supported by substantial evidence, and holding said order arbitrary and capricious.

We overrule these points.

We shall discuss the second point first.

In denying the application, the Savings & Loan Commissioner found that appellees were eligible for a charter under the provisions of Article 852a, Section 2.08, R.C.S., except in the following respects: there was no public need for the proposed association; that there was not a likelihood of a profitable operation; and that the proposed association would unduly harm existing associations.

The substantial evidence rule governs appeals from orders of the Savings & Loan Commissioner, Gerst et al. v. Cain, 388 S.W.2d 168, Sup.Ct.

Even though the substantial evidence rule creates a presumption in favor of the administrative order, after a review of this record, we find that the order cannot be upheld and the trial court was correct in setting it aside.

The application in question sought a charter for an association to be known as Northwest Savings Association to be established at 14,430 Hempstead Highway, Houston, Texas.

The site was selected upon the basis of studies made by Ralph S. Ellifrit, a city planning consultant and Robert Branson, a marketing economist. Both are qualified experts. From 1940 until 1964, Mr. Ellifrit was director of city planning for the city of Houston. In connection with the city of Houston, he made repeated studies of population growth, traffic flow, and subdivision development. Something over 2,000 subdivisions were reviewed and approved during Ellifrit's tenure as director of planning. He dealt frequently with shopping center development and with the proper utilization of shopping center facilities. He has had ample experience in determining the sphere of influence of any particular shopping center or commercial development, basing his decisions upon census figures, population statistics compiled by the Houston Chamber of Commerce and various business enterprises within the city.

Robert Branson is a graduate professor at Texas A & M University and a member of the marketing research firm of Branson and Associates in Bryan, Texas, and is a marketing economist. His firm handles various types of market research problems for business firms and organizations, a considerable part of which has been the analysis of the market for consumer goods and consumer services. Before going to A & M in 1955, Branson was a marketing economist and statistician for the United States Department of Agriculture. He holds B.A., M.A. and Ph.D. degrees. The Ph.D. degree is from Harvard and is in economics.

The selected site is in a shopping center which includes a post office, a supermarket, and other business activities. The studies made by the two expert witnesses established that an association at that particular site would have a reasonable and logical trade area which was designated Primary 1 and Primary 2 and depicted on a map introduced in evidence both before the Commissioner and in the trial court.

One of the prime factors in making this location is the Hempstead Highway which is the main gathering artery for this area. In this connection, consumer buying habits, traffic flows, ingress and egress

from residential areas were considered with respect to the location chosen. In addition, a post office, which operates in the same shopping center as the proposed Savings & Loan Association, serves quite an extensive surrounding rural area. An additional consideration was a supermarket located in this same shopping center, which not only serves as a center for purchases, but also cashes checks for its customers. In this latter respect, the supermarket maintained a list of preferred customers whose checks would be cashed. Dr. Branson studied these lists and found 1046 names, a large proportion of the names listing rural addresses in the environs. These included residents of the nearby communities of Cypress, Hockley, Waller and even in the Tomball area.

The evidence further indicated that while a shopping center normally serves only an area of 10 or 15 blocks square, the area in question is not a typical shopping center area but is one that, in addition to serving the surrounding community, serves a wide rural area that extends for quite a distance.

While the whole section is rapidly changing from rural to urban, the testimony indicates that the rural portion of the projected trade area is exceptionally high in income.

Appellees further presented evidence disclosing that in a period from 1960 to 1965 the population in the immediate area to be served had increased 42% and presented an increase from 12,846 as reported in the 1960 census to a total of 18,265 in 1965. The increase in Houston as a whole for the same period was 17%. That 1,550 houses have been built in the area between 1960 and the first part of this year. A majority of these homes are in the $15,000 classification or upward. A projection of the population for the year 1970 is between 25,000 and 30,000 people. Estimating an average income of $5,000 per family, which estimate was considered low, the income base in the area was estimated to be 25½

million dollars a year with an annual net savings flow of 1½ million dollars.

The increase in population of the Primary 1 and Primary 2 trade areas was further shown by statistics relating to Cypress-Fairbanks School District. Between 1951 and 1965 the number of scholastics increased from 575 to 4,063. The boundaries of the school district are approximately the same as those of the trade areas which Northwest Savings Association proposes to serve.

On December 15, 1964, the school district passed a 3½ million dollar bond issue. The school board has already sold a million dollars of the issue to build one and possibly two elementary schools within the immediate future. The remainder is being held for future expansion.

At the hearing before the Commissioner, B. F. Adam, who has been on the school board for approximately 15 years, testified that between 1951 and 1965 property evaluation in the school district increased from about $15,000,000 to about $63,000,000. He gave substantially the same testimony during the trial in the District Court. The figures were substantiated by William V. Copeland, tax assessor-collector for the district. He stated that in 1953 the assessed evaluation was $58,000,000, in 1964 it was $63,000,000, and in 1965 it was $75,500,000.

Further, there was evidence that with no further growth anticipated, there is presently a sufficient mortgage loan demand and savings demand to support an institution with total assets of from three to four million dollars.

In view of the countervailing testimony, it is unnecessary to detail appellees' evidence further other than to say that evidence was presented as to a present existing need for an association to serve the proposed area; that other savings and loan associations do not serve or solicit business in the proposed area; that persons in the area that Northwest will serve have

had difficulty both in securing loans and in servicing loans; that both interest rates and brokerage fees are higher in the area in question than for comparable property elsewhere in the Houston area; that by projecting the building and loan trends in the area from the period 1965 to 1970 there will be a requirement of 7,700 residences in the area with a requirement of 5.6 million dollars in loan funds. This figure was arrived at by estimating the average loan to be in the neighborhood of $12,000.

None of the above testimony was disputed at either proceeding.

The evidence offered in defense of the order was too general, vague and inconclusive to be called substantial.

The Commissioner himself testified that in his opinion the volume of business in the community to be served by the proposed association is not such as to indicate a profitable operation and that the proposed association would unduly harm existing corporations. Substantial proof of these opinions would have upheld the order, however the gist of his testimony in support of this opinion was that there are already 24 State and Federal Charters in Harris County with 33 authorized branches. That there are 10 associations within a 50 mile radius of Houston, 15 or 17 within a 100 mile radius, all of which can make loans in Harris County. In addition, he made the observation that, in his opinion, the Federal Home Loan Bank would deny Northwest Savings Association's request for federal insurance on their savings. That such insurance was necessary for the public to have sufficient confidence in the association in order to make their savings program successful. These broad conclusions unsupported by any detailed factual evidence as to the reasons therefor, cannot be called substantial evidence, and if so allowed would preclude the necessity of a trial.

A Mr. James Lammers, executive vice president of the Spring Branch Savings and Loan Association, testified in opposition to the application. A summary of his testimony is not necessary to this opinion. It has no bearing here as it was conclusively shown that his association did not serve the area in question (with the exception of very small percentage of loans) and that the great bulk of Spring Branch's loans was from the Spring Branch School District area, an area not pertinent here. Mr. Lammers did present two aerial photographs of the area that Northwest Savings seeks to serve along with four polaroid pictures taken at ground level. The purpose of the photographs was to show the sparseness of development in the area and, while they were evidence, they certainly were not of nature substantial enough to uphold the order in view of the case presented by appellees.

A Mr. Ervin Boessling, who identified himself as a homebuilder, testified that he built two houses in the area sought to be served and aided one party in obtaining a home loan on the house at 6%. That Spring Branch Savings & Loan Association made the loan.

The State is the only party to this appeal not having been joined by Spring Branch Savings and Loan Association.

To quote our holding in Gerst v. Cain, 379 S.W.2d 699, at p. 710, "We are convinced that none of the findings made by the Commissioner, express or implied, to sustain his rejection of the application of Metropolitan is reasonably supported by substantial evidence and that the judgment of the Trial Court should be affirmed." Gerst was affirmed by the Supreme Court in 388 S.W.2d 168.

Appellant's remaining point of error is that of the trial court in overruling appellant's motion in limine and allowing the introduction of evidence at the trial of this cause which was not evidence adduced at the public hearing on March 10, 1965 concerning appellees' application for a savings and loan charter.

We overrule this point.

While in Gerst v. Nixon, 399 S.W. 2d 845, we held that the statute before us limits the review by the court to the record made before the Commissioner, the evidence adduced in the District Court here tracked, for all practical purposes, that which was presented before the Commissioner. Any error was harmless under Rule 434, Texas Rules of Civil Procedure.

We affirm the judgment of the trial court.

Affirmed.