Orren L. NIXON et al., Appellants,

v.

James O. GERST, Savings and Loan Commissioner of Texas, Appellee.

No. 11505.

Court of Civil Appeals of Texas.
Austin.

Feb. 1, 1967.

Rehearing Denied March 1, 1967.

Second Motion for Rehearing Denied
March 22, 1967.

Heath & Davis, Dudley D. McCalla, Alvis & Carssow, Austin, for appellants.

Waggoner Carr, Atty. Gen., Hawthorne Phillips, First Asst. Atty. Gen., T. B. Wright, Executive Atty. Gen., Robert C. Flowers, Asst. Atty. Gen., Austin, Zbranek & Friend, J. C. Zbranek, Liberty, for appellee.

HUGHES, Justice.

Orren L. Nixon, J. R. McDonald, Thomas I. Fetzer, Benjamin C. Lively, J. M. Windham and Sidney R. Smith, individually and as proposed directors and shareholders of the Livingston Savings and Loan Association of Livington, Texas, appellants, brought suit against James O. Gerst, Savings and Loan Commissioner of Texas, in the nature of an appeal from an order of the Commissioner entered September 24, 1965, approving an application for a charter for Trinity Valley Savings and Loan Association of Cleveland, Texas, which location is about 28 miles from Livingston.

Intervening in the trial court and aligned with the Commissioner were John W. Miller, M. E. Enloe, A. H. Duncan, Glendon D. Toler, James H. Sewell, Carl Williams, W. D. Dunman, Jack McKellar and J. C. Zbranek. Intervenors appeared as representatives of the incorporators and shareholders of the Trinity Association of Cleveland.

Trial below resulted in an affirmance of the order of the Commissioner.

Appellants' single point of error, very general in nature, is that the trial court erred in holding the order of the Commissioner to be valid, legal and binding.

Our decision will be made solely from the record made before the Commissioner. Gerst v. Nixon, Tex.Sup., 411 S.W.2d 350. (11–30–66)

The appellants here are the proposed directors and shareholders of the Livingston Association the charter for which was approved by the trial court, this Court and proved by the trial court, this Court and

the Supreme Court in Gerst v. Nixon, supra.

Appellants' principal complaint here seems to be that the Commissioner did not recognize the existence of the Livingston Association in entering the order approving the charter for Trinity in Cleveland.

At the time the hearing on the Trinity application was conducted by the Commissioner, the trial court had sustained the charter application of Livingston but neither this Court nor the Supreme Court had acted in the matter. We consider the status of the Livingston Association at the time of the hearing on the application for the Trinity Association to be immaterial for the reason that appellants were notified by the Commissioner of the hearing and appeared at the hearing and participated therein through counsel and protested approval of the Trinity application.

■ It seems to us that the record of the proceedings before the Commissioner refutes the contention of appellants that the Commissioner ignored the existence of Livingston.

Appellants also argue under this point that the order of the Commissioner did not comply with the provisions of Sec. 11.11(4) Art. 852a, Vernon's Ann.Tex.Civ.St., which require a contested order to contain findings of fact and conclusions of law and if the findings of fact are stated in statutory language that there be an accompanying concise and explicit statement of the underlying facts supporting the findings.

The order contains the following specific findings in support of its statutory findings:

"This application for Trinity Valley Savings and Loan Association is for a charter to be located in the town of Cleveland which is in the extreme northwest corner of Liberty County, Texas. The area shown by the testimony as the normal trade area for the majority of the businesses established in the town of Cleveland extends approximately 27 miles.

East, 12½ miles West, 30 miles North and 20 miles South and contains approximately 1,500 sq. miles with a present estimated population of around 35,000 people. The town of Cleveland itself shows census figures as follows:

1940—1,783
1950—5,183
1960—5,838

The present estimation of the population of the town of Cleveland is in excess of 6,100 and other economic indicators such as the water, gas, light and telephone connections, and school enrollments also indicate that the area is growing. The town is located on the East Texas Freeway which connects it with Houston, Texas, and it was shown that very substantial progress towards completion of this segment of the East Texas Freeway has already been accomplished. The new Houston International Airport facility is also located near this freeway and is within a shorter driving time of Cleveland and the many subdivisions being developed close thereto, than the driving time to many areas of Houston. All of these factors, as well as others adduced by the testimony, are contributing to the expansion and growth of Cleveland and should furnish considerable emphasis to the future growth of Cleveland and the area which applicants propose to serve. No existing associations protested this application, which existing associations are located at distances of 22 to 30 miles distant. The only protest was from the incorporators of a proposed association which is seeking to be established in the town of Livingston, some 28 miles distant, and which have not received a final charter nor commenced business. All of the evidence adduced at the hearing pertaining to mortgage loan activity such as the deed of trust records, mechanics lien records and building permit figures from various portions of the proposed area indicate a substantial and sufficient volume of loan business and the testimony showing the income and savings of residents of the area also indicates sufficient volume in this regard. It was also shown that long term real estate financing is not conveniently or locally available to Cleveland, and the efforts of nearby institutions in this area are not sufficient to meet the needs demonstrated, especially since institutions in other areas are able to serve this area only during times when they have a surplus of funds on hand."

It is our opinion that these specific findings of the Commissioner show compliance with his duty under Sec. 11.11(4), supra, and that such specific findings are adequate to sustain the statutory findings to which they refer.

Appellants have no point to the effect, and do not argue, that the order of the Commissioner, about which they complain, is not reasonably supported by substantial evidence.

We affirm the judgment of the trial court.

Affirmed.

O'QUINN, J., not sitting.

## ON MOTION FOR REHEARING

We quote from appellants' motion for rehearing:

"We agree that the Commissioner recognized and considered Livingston Savings and Loan Association prior to the hearing and permitted its representatives to appear at such hearing.

But there is no real dispute over the fact that the Commissioner failed and refused to recognize or consider Livingston Savings and Loan Association when he entered his order of September 24, approving the Trinity Valley charter application."

In its original brief appellants quote the following testimony of Commissioner Gerst given on appeal in the District Court to sustain its position that the Commissioner

did not recognize or consider Livingston when he entered the order approving the Trinity Valley charter application:

"Q Well, to get back to the original question, Mr. Commissioner: In making the finding that there was no undue harm, did you or did you not consider and weigh the matter of the existing judgment ordering a charter to be granted to Livingston?

"A Well, I wouldn't think so, because it wasn't an existing association at the time."

Other testimony by the Commissioner on this point is as follows:

"Q Now, with respect to your order and decision in granting the Cleveland or Trinity Valley application, and in overruling the motion for rehearing of the protestants, the Livingston group, in considering the matter of undue harm did you take into consideration the order and judgment of the Court ordering the charter to be issued for the Livingston Association?

\*   \*   \*   \*   \*   \*

A Mr. Alvis, I might have taken that into consideration; I really don't recall. But I think the main consideration was that Cleveland was some twenty-eight or thirty miles from Livingston and really wasn't considered the same area."

The Commissioner also testified:

"Well, it could very well be that if there had been a charter granted for Livingston, one could have very well still been granted for Cleveland. They are far enough apart to where I think it is two different areas, two different neighborhoods; and if there had been a need for one in Livingston, it might have had some effect, but I don't think it would preclude one from having been granted in Cleveland."

■   Appellants contend that notwithstanding the rule that the trial on appeal is limited to the record made before the Commissioner that they are entitled on appeal to the district court to offer evidence of alleged irregularities in procedure before the Commissioner.

We overrule this contention here on two grounds (1) that the testimony of the Commissioner, fairly interpreted, is that he did consider Livingston when he entered his order approving the Trinity Valley charter application, and (2) no irregularity in procedure before the Commissioner is shown.

■   The most that appellants attempt to show is the mental process of the Commissioner in reaching his conclusions on the matters before him. This is not permissible.

In R. R. Comm. of Texas v. Galveston Chamber of Commerce, 105 Tex. 101, 116, 145 S.W. 573, 580, the court in reviewing a rate order of the Railroad Commission stated:

"It is not within the language nor the spirit of the 'law, which authorizes the courts to review the action of the Railroad Commission, that any court should investigate the methods adopted by the Commission in fixing its rates, nor the motives or purposes which prompted such action. The result and its effect upon the rights of railroads and shippers mark the limit of judicial inquiry."

In State Banking Board v. McCulloch, Tex.Civ.App., 316 S.W.2d 259, writ ref., n.r.e., this Court in discussing the validity of an order of the State Banking Board stated:

"It is not our province to search out reasons that prompted a member to vote as he did but only to determine whether there is evidence to support the vote."

We believe, by analogy, the rule prohibiting inquiry into the mental processes of a juror employed in reaching a verdict is applicable here.

We believe that it was improper to subject the Commissioner to the type of examination conducted here and that the Commissioner should not be called upon to explain the mental processes by which he made the findings or reached the conclusions required of him.

The motion is overruled.