CITIZENS OF TEXAS SAVINGS & LOAN
ASSOCIATION et al., Appellants,

v.

W. Sale LEWIS, Savings and Loan Com-
missioner et al., Appellees.

No. 11908.

Court of Civil Appeals of Texas,
Austin.

July 5, 1972.

Rehearing Denied July 26, 1972.

Heath, Davis & McCalla, Dudley D. McCalla, Austin, for appellants.

Crawford C. Martin, Atty. Gen., Ralph R. Rash, Bill Flanary, Asst. Attys. Gen.,

Jacobsen & Long, Joe R. Long, Gary Evatt, Austin, for appellees.

PHILLIPS, Chief Justice.

This suit was filed in the District Court of Travis County to set aside an order of the Savings and Loan Commissioner, granting a charter for a savings and loan association to be located in Baytown, Harris County, and to be named Baytown Savings Association.[1]

The District Court overruled Appellants' procedural objections and entered judgment sustaining the Commissioner's order. Hence this appeal.

We affirm.

■ Appellants first complain that the trial court erred in failing to hold the Commissioner's decision and order invalid for his failure to set out a concise and explicit statement of underlying facts alleged to support the findings of "public need," volume of business in the community such as to indicate profitable operation, and that operation of the proposed association will not "unduly harm" any existing association.

We overrule this point.

Section 11.11(4) of the Texas Savings and Loan Act, Art. 852a, Tex.Rev.Civ. Stat.Ann. provides as follows:

"A decision or order adverse to a party who has appeared and participated in a hearing shall be in writing and shall include findings of fact and conclusions of law, separately stated, on all issues material to the decision reached. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings."

Under the Texas Savings and Loan Act the Commissioner must make findings relative to public need, volume of business in the community such as to indicate profitable operation and that the proposed operation will not "unduly harm" any existing association. Section 11.11(4) of the Act requires "a concise and explicit statement" of the underlying facts supporting the findings.

The Commissioner's order contains affirmative findings on the standards of "public need," "volume of business" and that existing institutions would not be unduly harmed. The part of the Commissioner's order which purports to set out the underlying facts reads as follows:

"The service area of the proposed association is the city of Baytown and the surrounding areas in Liberty, Chambers, and eastern Harris Counties. The city of Baytown has traditionally been a trading center for this area. Baytown has had a substantial increase in population since the 1960 census. The Commissioner is of the opinion and finds that the current population of the service area is at least 60,000 persons.

The economy of Baytown is industrially based with the petrochemical industry being of major importance. The prospects of industrial growth and expansion in the Baytown area are excellent. The United States Steel Company recently acquired a 14,000 to 16,000 acre tract near Baytown. The company is currently constructing a large new steel mill on this site. The facility is expected to begin production this year. Within one year after this plant begins production, it will employ an estimated 1,000 to 1,200 persons. In addition to providing increased employment opportunities, the plant is

1. This case originally involved an application by Houston First Savings Association of Houston for a branch office in Baytown, which application was consolidated with the hearing on the charter application. After the hearing but prior to the Commissioner's decision, Houston First withdrew its application, and the Commissioner thereafter entered his orders of October 7, 1969, approving the charter application, and November 6, 1969 overruling Appellants' Motion for Rehearing.

very likely to attract substantial satellite industries and businesses.

Houston Light and Power Company is constructing a new generating plant in the area, and the telephone company in Baytown has recently expanded its facilities. Two new commercial banks have opened for business in Baytown since the first of the year. The city now has five commercial banks and two savings and loan associations.

The city of Baytown has responded progressively to the growth of the community and is preparing for anticipated future growth. In 1965 the voters of Baytown approved a $5 million bond issue for public improvements. Several citizens committees have recently conducted a study of the present and future needs of the city and have recommended the submission of several large new bond issues to the voters of the city.

The economic data presented at the hearing demonstrates the pattern of growth in the community. Population levels, bank and savings and loan deposits, and utilities connections have increased substantially in recent years, and income levels in the area are high. Savings adequate to support a new association in the community are available.

Residential construction activity is, and has been for several years, at high levels in the Baytown area. Both single and multi-family residential development are occurring. The testimony of various witnesses and the building permit data indicate a large and increasing demand for residential mortgage lending funds. The already large demand for such funds is very likely to be accelerated by the growth of the area.

The two existing associations in Baytown are strong, profitable, growing institutions. At the time of the hearing, one of these associations had total assets of approximately $20 million and the other, total assets in excess of $30 million. The new association will provide a need-ed competitive alternative to serve the public in the area without unduly harming either of these, or any other existing associations."

After the Commissioner's order was entered, Appellants filed a Motion for Rehearing with the Commissioner who entered the following order overruling the motion:

"With regard to Ground 11, the Commissioner is convinced that the original order herein contains a sufficient statement of the underlying facts supporting the findings as to public need, profitable operation, and no undue harm to other associations. However, the Commissioner notes and finds that the statistical data before him indicating growth and prosperity were impressive.

From year-end 1965 to year-end 1968 total savings in the two existing associations located in Baytown increased $9.5 million—from $35.5 million on the former date to $45.0 million on the latter date. During the same period total deposits in the commercial banks located in Baytown increased by $28 million—from $43.8 million at year-end 1965 to $71.8 million at year-end 1968.

The population of the city of Baytown increased from approximately 29,000 in 1960 to approximately 50,000 in 1969. An estimated 40 percent of the households in the trade area have an annual income of $10,000 or more.

Building permit data for the city of Baytown indicates the high level of residential construction activity:

*Building Permits*
*New Single Family Residences*

| Year | Number | Dollar Value $1,000's |
|------|--------|------------------------|
| 1965 | 123 | $ 1,900 |
| 1966 | 154 | 2,400 |
| 1967 | 269 | 4,400 |
| 1968 | 226 | 4,100 |
| 1969 (3 mos.) | 84 | 1,300 |

Ground 11 is overruled."

Appellants complain that both orders set out above, when touching upon the relevant

issues to be determined, resort to vague and "general conclusionary language" rather than underlying facts. In this respect Appellants point to the conflicting testimony on the availability of savings and contend that neither order tells "why" the order contains the conclusion that "savings adequate to support a new association" are available.

■ The mere presence of a generalization in the order does not render it invalid. Basic facts by their very nature are often in the form of "generalizations" or "conclusions." Professor Davis describes findings of "basic" or "underlying" facts as: "The basic findings are those on which the ultimate finding rests; the basic findings are more detailed than the ultimate finding but less detailed than a summary of the evidence" Davis, Administrative Law Treatise, Sec. 16.06, p. 451 (1958).

In Nixon v. Gerst, 412 S.W.2d 701 (Tex. Civ.App.1967, writ ref'd n. r. e.) this Court considered the underlying facts in the Commissioner's order necessary to support the ultimate findings of public need, profitable operation and absence of undue harm. The order in *Nixon, supra,* was less detailed, and the conclusions were as general in nature as the ones here, however, we sustained the order. As was stated by the Supreme Court of the United States in Colorado Interstate Gas Co. v. F. P. C., 324 U.S. 581, 595, 65 S.Ct. 829, 836, 89 L.Ed. 1206 (1945): "The findings of the Commission in this regard leave much to be desired since they are quite summary and incorporate by reference the Commission's staff's exhibits on allocation of cost. *But the path which it followed can be discerned.* And we do not believe its findings are so vague and obscure as to make the judicial review contemplated by the Act a perfunctory process." (Emphasis added)

It is difficult under the administrative practice of this State as developed by the various agencies, by the Courts, and by reference to the pertinent statutes to neatly bundle evidence in separate categories la-

beled "basic or underlying facts" or "ultimate findings." In Gerst v. Nixon, 411 S.W.2d 350, at 358 (Tex.1966) the Court defined "public need" in the following manner: ". . . a substantial or obvious community need for the proposed association in the light of attendant circumstances, as distinguished from a mere convenience on the one hand and an absolute or indispensable need on the other." In Gerst v. Goldsbury, 434 S.W.2d 665 (Tex.1968) in speaking to—"public need," the Court held: "The resolution of this question necessarily encompasses all the relevant circumstances disclosed by the evidence presented to the Commissioner, including, but not limited to, the adequacy of the services of the existing institutions whose facilities are available to the residents of the community area proposed to be served."

The Commissioner's finding that "Savings adequate to support a new association in the community are available" is not the only finding in the order relating to savings availability. Savings is in the most basic sense a function of people and money. The basic findings of the Commissioner relating to savings availability include at least the following: the number of people in the community to be served; the growth in population in the community in the past and the outlook for future growth in population; the percentage of households in the community with annual income of $10,000 or more; the assets and general operating condition of existing savings and loan associations; and, the basis of the economy and the outlook for future economic growth and development. The order before us has findings with respect to each of these matters which may well be considered basic or underlying to the general conclusion reached with respect to adequacy of savings. The order comports with the following statement of the law found in Cooper, State Administrative Law, p. 472:

"The general test imposed by the state courts as a basis for judging the adequacy of the findings of fact reflects the purposes underlying the requirement that

there be such findings: viz., to apprise the parties of the reason for the decision, and to enable the reviewing court to determine whether the evidence supports the findings of basic fact and whether they in turn reasonably support the inferences of ultimate fact and the conclusions of law derived therefrom."

In this connection see Alamo Express, Inc. v. Railroad Commission, 407 S.W.2d 479 (Tex.1966).

The record reflects conflicting testimony on the availability of savings in the area to be served and often the basis used by the witnesses to arrive at specific amounts of savings available are sometimes nebulous and inconclusive.

■ The Legislature has designated the office of Commissioner as possessing a certain expertise in these matters. He is not required to accept the conclusions of any witness, and is entitled to hear and analyze the underlying data and form his own conclusions. See Gerst v. Gibraltar Savings Association, 413 S.W.2d 718 (Tex.Civ.App. 1967, ref. n. r. e. 417 S.W.2d 584); Gerst v. Adam, 403 S.W.2d 832 (Tex.Civ.App. 1966, no writ); Strain v. Lewis, 461 S.W.2d 498 (Tex.Civ.App.1971, writ ref'd n. r. e.).

■ The other findings of the Commissioner about which Appellants complain is: "The new association will provide a needed competitive alternative to serve the public in the area without unduly harming either of these [the two existing associations in Baytown], or any other, existing associations." Appellants' contention is that this statement infers a lack of service by existing associations or a lack of competition among them. In his order, the Commissioner characterizes these two associations as "strong, profitable, growing institutions." The statement about the need for an additional association relates purely to public policy.

■■ The determination of how many differing competitive alternatives an industrial community of 60,000 needs is manifest-

ly a matter of policy and judgment which lies in the discretion of the Commissioner. Benson v. San Antonio Savings Association, 374 S.W.2d 423 (Tex.1963). In State Banking Board v. Airline National Bank, 398 S.W.2d 805 (Tex.Civ.App.1966, writ ref'd n. r. e.) this Court recognized the desirability of competition. The law does not require that applicants for a charter establish that existing associations are not adequately serving the public in the community. Gerst v. Houston First Savings Association, 422 S.W.2d 514 (Tex.Civ.App.1967, no writ), Spring Branch Savings & Loan Association v. Gerst, 420 S.W.2d 618 (Tex. Civ.App.1967, writ ref'd n. r. e.).

The finding that an additional competitive alternative is needed or desirable carries with it no inference of "inadequate" service. There is no requirement as Appellants suggest, that the Commissioner make a basic finding on "adequate" or "inadequate" service.

■ Appellants next complain of the action of the Commissioner in entering his order and in overruling Appellants' motion for rehearing without ruling on Appellants' objections to the admission of certain evidence, and the error of the trial court in admitting the evidence not ruled on by the Commissioner.

We overrule this contention.

The evidence objected to consisted of a recitation by a proposed director of the proposed association of statements of other persons about stock sales of, and their feelings toward, the proposed association. Appellants also objected to statements read from a newspaper by opposing counsel. Counsel for appellants further objected to portions of an economic report of an expert witness being read into the record, not by the expert, but rather by counsel.

At the time of Appellants' objections, the Commissioner was not presiding, and the hearing officer deferred ruling on the objections, advising that the Commissioner would rule at a later time. The Commis-

sioner never ruled on Appellants' objections, prior to the entry of his order. He did overrule Appellants' motion for rehearing which contained Appellants' complaint about his failure to rule.

■ In a conventional trial, one who objects to evidence must secure a ruling from the court on his objection in order to preserve the point for appellate review. See Webb v. Mitchell, 371 S.W.2d 754 (Tex.Civ.App.1963, no writ). In that connection one making an objection is entitled to an immediate ruling admitting or excluding the evidence either absolutely or conditionally so that he may know what evidence on his part will be needed in explanation or rebuttal. McCormick and Ray, Texas Law of Evidence, Vol. I, p. 29. We are of the opinion that the same rules should be applicable in a charter hearing before the Savings and Loan Commissioner. This is especially true since under the present statute the record made before the Commissioner is conclusive. As Appellants never obtained a ruling their complaint is not before this Court.

■ Appellants by a group of points next claim that the Commissioner and the trial court erred in admitting certain evidence characterized by them as hearsay. The testimony complained of was given by Mary A. Grigsby, John W. Beck, Eldon Berry, and E. V. Muller. While Appellants claim error with respect to the admission of the objectionable testimony of each person, they seem to emphasize their objections to certain testimony of Mary A. Grigsby and John W. Beck. Mary A. Grigsby was permitted to testify over objection that several persons just passing by had come into the office and stated that they were not able to secure loans "over eighty percent." The Commissioner permitted John W. Beck to testify from a newspaper story in *The Baytown Sun*, and from what he had been told

by persons employed by U. S. Steel that the company had spent approximately 150 million dollars for the "Texas works."

The testimony of Mary A. Grigsby and John W. Beck alluded to above was hearsay, and Appellants' objections to that testimony should have been sustained. However, from an examination of the record as a whole, we are unable to say that the admission of the hearsay testimony was harmful because, disregarding the hearsay evidence, we are of the opinion that the Commissioner's order was still supported by substantial evidence.

■ Appellants further complain that the Commissioner's order reveals that in addition to the "evidence and statements of counsel" the Commissioner "heard" and considered the applications of Houston First and the Charter Applicants, as well as some "official records," presumably of the Savings & Loan Department. But that at no point during the hearing were the applications themselves or any "official records" of the Department introduced in the record so that Appellants could test, challenge, or rebut the information contained therein. Appellants contend, and we would have agreed with this contention had we found it to have had merit under the facts before us,[2] that the Commissioner "Can't go to his own sources and base his decision on that information unless in some manner he makes it a matter of record so that it may be tested by cross-examination or other methods of testing the evidence." But such is not the case before us. At the outset of the administrative hearing, the Commissioner, as is customary in such proceedings, officially noticed that the proceeding was a consolidated hearing on the application for a branch office of Houston First Savings and in the application for a charter for the proposed Baytown Savings Association. The Commissioner also took

2. Gerst v. Nixon, 411 S.W.2d 350 (Tex. 1966); Substantial Evidence and Insubstantial Review in Texas, 23 SWLJ 239, Justice Tom Reavley; Administrative Law Treatise, Davis, Section 15:10; Elizabeth Federal Savings and Loan Association v. Howell, 24 N.J. 488, 132 A. 2d 799 (1957).

official notice of the "proper filing" of the plications, the conformity of the applications to the applicable provisions of statute and rule, publication of notice of hearing, the mailing of notice of hearing, the mailing of notice of hearing to area associations, and the receipt of protest.

■ By statutory definition, the articles of incorporation and the by-laws are part of the "Application," Tex.Rev.Civ.Stat.Ann. art. 852a, Section 2.01, and the charter application form prescribed by the Savings and Loan Department requires those documents to be attached to the application as a part of it. The Commissioner also took official notice of his other official records relating to the application—the articles of incorporation and by-laws. Through the process of official notice, the applications and official records of the Commissioner became a part of the record in this matter. The Court stated in Gerst v. Nixon, 411 S.W.2d 350 (Tex.1966) that, absent the unconstitutional portion, the effect of the statute is "to adopt the rule that the Commissioner's order is to stand or fall upon the evidence adduced *and matters noticed* at the Commissioner's hearing." An application is required to invoke the jurisdiction of the Commissioner, and he cannot any more render a decision without considering the application, a part of his "official records," than a trial judge can render a judgment without considering the pleadings. Tex. Rev.Civ.Stat.Ann. art. 852a, Sections 2.07, 2.08.

■ Given that the Commissioner could properly consider the application and his official records, mentioned above, for the purpose of determining that his jurisdiction to decide the issues of public need, profitable operation, and undue harm had been properly invoked, the Courts presume that the Commissioner performed his duties in compliance with the law, and the burden is upon Appellants to establish that he did not. Gulf Land Company v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73 (1939); Kavanaugh v. Underwriters Life

Ins. Co., 231 S.W.2d 753 (Tex.Civ.App. 1950, writ ref'd).

The existence of the official records in question was made known to Appellants by official notice at the hearing, and the Appellants had the opportunity, of which they availed themselves, to examine, test and challenge those materials. These records were officially noticed and presumably considered only for a proper purpose.

■ In their final point Appellants complain that the trial court erred in holding the order and decision, the findings of public need sufficient volume of business, and the absence of undue harm, were reasonably supported by substantial evidence.

We overrule this point.

Under this point Appellants have called this Court's attention to a single discrepancy in one of the basic findings made by the Commissioner. This finding states: "from year-end 1965 to year-end 1968 total savings in the two existing associations located in Baytown increased $9.5 million from $35.5 million on the former date to $45.0 million on the latter date." Appellants maintain that the report from which these figures were taken actually stated that the 1965 year-end savings were $33.5 million and not $35.5 million. That the order cannot stand inasmuch as one of the basic findings made by the Commissioner is patently erroneous.

■ Section 2.08 of the Texas Savings and Loan Act, prescribes the standards which applicants must satisfy before the Commissioner grants a charter to establish a savings and loan association. The pertinent standards are: the existence of a public need for the proposed association; the existence of a sufficient volume of business in the community in which the proposed association will operate to indicate a profitable operation for the association; and the negation of undue harm resulting to existing associations from operation of the proposed association. We cannot agree with

Appellants' position that a probable error in the Commissioner's finding, such as the one before us, renders the order and decision invalid. Under Section 11.11(4) of the Act the ultimate findings of the Commissioner must have support from a review of the entire record. Miller v. Railroad Commission, 363 S.W.2d 244 (Tex.1962). Thus, considering the record as a whole, we are of the opinion that the Commissioner's finding on the necessary savings available is reasonably supported by substantial evidence. Texas Aeronautics Commission v. Braniff Airways, Inc., 454 S.W.2d 199 (Tex.1970). The Supreme Court has held that absolute accuracy is not necessary where an order is supported by a reasonable basis in fact and a pattern is furnished by which rights can be determined. Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022 (1942).

The order is presumptively supported by substantial evidence. Appellants have not undertaken to point out to us where it otherwise lacked the required evidentiary support.

The substantial growth of Baytown and its prospects for future growth are not matters of serious dispute. From 1960 to 1968 population increased by 60%. During the same period, savings shares in savings and loan associations increased by more than 320%, and commercial bank deposits increased by approximately 150%.

U. S. Steel's new plant being built at the time of the hearing was huge and had already attracted a number of service industries. The realities of the mortgage lending market in Harris County and Baytown are well known. Harris County is an importer of mortgage funds. Borrowers must go outside the area to obtain funds because the area is growing so rapidly. The need for such funds in the Baytown area is immediate and is likely to increase. There are very few houses either to rent or buy at the present time. With the increase in population likely to be generated by new

basic employment possibilities, the shortage will become more acute.

We affirm the judgment of the trial court.

Affirmed.