**CITY SAVINGS ASSOCIATION et al., Petitioners,**

v.

**SECURITY SAVINGS AND LOAN ASSOCIATION OF DICKINSON, Texas, Respondent.**

**No. B–6699.**

Supreme Court of Texas.

Jan. 18, 1978.

Rehearing Denied Feb. 22, 1978.

931

Baker & Heard, Dow H. Heard and Lowell B. Hays, Houston, John L. Hill, Atty. Gen., Thomas M. Pollan, Asst. Atty. Gen., Graves, Dougherty, Hearon, Moody & Garwood, Robert J. Hearon, Jr., Austin, for petitioners.

Clark, Thomas, Winters & Shapiro, Mary Joe Carroll and Conrad Werkenthin, Austin, for respondent.

DENTON, Justice.

This is a suit by Security Savings and Loan Association of Dickinson, Texas, to set aside an order of the Savings and Loan Commissioner granting the charter application of City Savings Association to be located in League City, Texas. The district court upheld the Commissioner's order, but its judgment was reversed and the cause remanded to the Commissioner for further proceedings by the court of civil appeals. 547 S.W.2d 710. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

Upon the trial, petitioner introduced the record of the hearing held by the Commissioner, and a certified copy of the petitioner's application for charter. The trial court admitted the charter application with its attached exhibits. The court of civil ap-

peals held this to be reversible error because the application was not offered in evidence before the Commissioner, but it did not pass on the contention that the Commissioner's order was not supported by substantial evidence.

Judicial review of orders of the Savings and Loan Commissioner is controlled by Art. 852a § 11.12.[1] Section 11.12(5)(b) provides in pertinent part:

The review of any other act, order, ruling or decision of the Commissioner or of any rule or regulation shall be tried by the court without a jury in the same manner as civil actions generally . . . but no evidence shall be admissible which was not adduced at the hearing on the matter before the Commissioner or officially noticed in the record of such hearing.

The Savings and Loan Act is rather specific in its requirements concerning the application for savings and loan charters and the Commissioner's consideration of such applications. Section 2.07 provides that when a "proper" application for a charter has been filed, the Commissioner is required to set a hearing and give interested parties an opportunity to appear and present evidence for or against such application. Section 2.01 sets out the requirements for an application for a charter. It must be shown that the capitalization requirements of Sections 2.02 through 2.04 have been met and the required funds paid in. The application must also contain two copies of Articles of incorporation for the proposed association stating (1) the name of the association; (2) the site of the principal office; and (3) the names and addresses of the intended directors. Two copies of the bylaws under which the association proposes to operate are to be included, together with statements, exhibits, maps and other data sufficiently detailed and comprehensive to enable the Commissioner to pass on the matters set forth in Section 2.08(2), (3), and (4) of the Act. The requirements of this section of the Savings and Loan Act are very

similar to Rule 1.1 of Rules and Regulations for Savings and Loan Associations. Section 2.08 of the Act provides "that the Commissioner shall not approve any charter application unless he shall have affirmatively found from the *data furnished with the application,* the evidence adduced at such hearing, and his official records that:"

(1) the prerequisites, where applicable, set forth in Sections 2.02, 2.03, 2.04, 2.05, and 2.06 have been complied with and that the Articles of incorporation comply with all other provisions of this Act;

(2) the character, responsibility and general fitness of the persons named in the Articles of incorporation are such as to command confidence and warrant belief that the business of the proposed association will be honestly and efficiently conducted in accordance with the intent and purpose of this Act and that the proposed association will have qualified full-time management;

(3) there is a public need for the proposed association and the volume of business in the community in which the proposed association will conduct its business is such as to indicate profitable operation;

(4) the operation of the proposed association will not unduly harm any existing association. [Emphasis added.]

Since *Gerst v. Nixon,* 411 S.W.2d 350 (Tex.1966), it has been settled that judicial review in cases involving applications for savings and loan charters is limited to the Commissioner's certified record. There the court held that the Legislature had adopted "the rule that the Commissioner's order is to stand or fall upon the evidence adduced and matters noticed at the Commissioner's hearing. It is from this record that the District Judge is to determine whether or not the Commissioner's order is arbitrary, i. e., whether it is reasonably supported by substantial evidence. The circumstance that the record of the Commissioner's hearing contains hearsay or other

1. Statutory references are to Tex.Rev.Civ.Stat. Ann. (Vernon's 1964).

species of evidence deemed unreliable is a matter for the consideration of the trial judge in determining the issue of 'substantial evidence.'" Through the process of official notice, the application, including the documents attached to the application as a part of it, becomes a part of the record in the matter. *Citizens of Texas Savings and Loan Association v. Lewis,* 483 S.W.2d 359 (Tex.Civ.App.1972, writ ref'd n. r. e.).

It is petitioner's contention that the Commissioner properly complied with the requirements of Section 2.08 in approving the application for a charter by considering the "data furnished with the application," the evidence adduced at such hearing, and his official records. At the beginning of the administrative hearing, the hearing officer placed in the record the following statement:

> Now, this concludes our introductory remarks, except to say that the Commissioner will take official and judicial knowledge of the fact that the application contains all of the prerequisites and that the protests are duly and timely filed, in connection with this particular hearing.

■ We think the Commissioner "officially noticed" the application when he officially found that it contained all prerequisites under Sections 2.01, 2.01a, 2.02, 2.03, 2.04 and 2.08. Thus the capitalization requirements of a proposed savings and loan charter, i. e., a statement as to the amount, if any, of permanent reserve fund subscribed and paid; the names and addresses of such subscribers and the amount subscribed; the amount of savings liability, if any, with which the association will commence business; and the amount of paid in surplus or expense fund with which the association will commence business as required by Sections 2.01, 2.02, 2.03, and 2.04, were officially noticed by the Commissioner and were before him. The capitalization, subscribers, and amount subscribed are definite and specific. These requirements are not speculative or subject to interpretation.

The application was made known to respondents by official notice of the hearing and the respondents had an opportunity to examine, test and challenge this material.

The requirements of Section 2.08(2), (3), and (4), namely, the character, responsibility and general fitness of the proposed incorporators, public need and profitability, and absence of undue harm of any existing associations were also "officially noticed" by the Commissioner and became a part of the record before the Commissioner.

Having been "officially noticed" by the Commissioner and thus a part of the record before him, the application, together with its attached exhibits, was admissible in the trial court, not as conclusive proof of the statements contained therein, but as evidence subject to be reviewed by the trial court. We think the court of civil appeals improperly found this evidence inadmissible in the trial court and not a part of the record. However, even if it may be said the application was erroneously admitted into evidence in the trial court, it was not essential to support the Commissioner's order.

■ Although respondents principally rely on the contention that reversible error was committed by the trial court in admitting into evidence petitioners' application for charter, they also have counterpoints of error which contend that the holding of the court of civil appeals is correct because there was not substantial evidence to support the Commissioner's order granting the charter.

In considering this contention we will be governed by the well settled substantial evidence rule. *Lewis v. Gonzales County Savings and Loan Association,* 474 S.W.2d 453 (Tex.1971); *Gerst v. Goldsbury,* 434 S.W.2d 665 (Tex.1968); *Gerst v. Nixon,* 411 S.W.2d 350 (Tex.1967).

The following information was contained in the application for charter and the attached exhibits, and was used by the hearing officer in finding the underlying facts

supporting his order; permanent reserve stock would be issued; the stock would not be retired or withdrawn except as prescribed by law; 25,000 shares were to be issued, with a par value of $10.00; $250,000 had been paid-in; there was a paid-in surplus of $62,500; the name of the association, its site, and the names and addresses of its directors; and the expectation of the applicants would be a net loss of $6,770 in the first year of operation, a net income of $36,300 in the second year, and a net income of $91,900 in the third year. This information was also included in the direct testimony by witnesses and exhibits offered by the applicants for the charter, thus the documents were cumulative of the direct evidence offered before the Commissioner. Two economists, a building contractor and a director and manager of the proposed Savings and Loan Association testified. The two economists testified that the primary trade area for the proposed Savings and Loan Association, League City, Texas, had the following characteristics: a 4% growth rate; a mean family income of $12,483; 1.1% unemployment; 6% of its population was below the poverty level; 40% of the population was under thirty-five years of age; the average cost of homes was in excess of $20,000. They further testified that there was only one savings and loan association and one bank in the primary trade area. Approximately 4.5 million dollars worth of construction took place in 1970 in the area. Other banks and savings and loan associations in the area surrounding the primary trade area had an increase in assets ranging from 42% to 186%. They noted that there was a substantial increase in time and savings deposits in the general area. They testified that the savings potential in 1974 was $3,634,000. In 1975 it would be $3,800,000, and in 1976 it would be $4,734,000. Both economists concluded that League City needed another savings and loan association, and that no undue harm would result from a second savings and loan association. Mr. Lammers, a Director and Manager of the proposed Savings and Loan Association testified as to the character of the directors, outlining their past business experience, in addition to the financial structure of the proposed Savings and Loan Association.

Respondents offered rather extensive evidence in opposition to the application including the testimony of an economist whose testimony contradicted in some aspects the testimony offered by the petitioner.

While there is evidence to the contrary, we believe there is substantial evidence in the record to support the Commissioner's order granting the charter application of Petitioner, City Savings Association, to be located in League City, Texas.

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.

Dissenting opinion by STEAKLEY, J., in which POPE, J., joins.

STEAKLEY, Justice, dissenting.

I agree with the writing and the judgment of the Court of Civil Appeals and in respectfully dissenting would add only this.

We had best confine judicial review to the record certified by the Commissioner and from this determine if the applicant has discharged its factual burden under Sections 2.01–2.08 of Art. 852a. See *Gerst v. Nixon*, 411 S.W.2d 350 (Tex.1966), where we wrote:

> The substantial procedural change in this rule by the 1963 Act was to make the record of the Commissioner's hearing *rather than evidence produced originally in court* the basis from which it must be determined if the evidence conclusively required affirmative findings relating to the matters mentioned in subsections (3) and (4) of Section 2.08. (Italics added for emphasis).

Perhaps it is not amiss to consider the application and attached documents noticed by the Commissioner but not offered in

evidence at the administrative hearing, to determine if the jurisdiction of the Commissioner was invoked. This was clearly the purpose of the "notice" of these documents by the hearing officer here: " . . . the Commissioner will take official and judicial knowledge of the fact that the application contains all the prerequisites . . . ."

But the court has gone much farther than this. Approved is the action of the trial court in expanding the certified record to include the application and all of the attached exhibits "for the facts stated therein." This is justified on the theory that "through the process of official notice" all is a part of the record whether or not introduced in evidence at the administrative hearing, and whether or not included in the certified record. *Citizens of Texas Savings and Loan Association v. Lewis*, 483 S.W.2d 359 (Tex.Civ.App.1972, writ ref'd n. r. e.), is cited in support. But this decision merely holds that the Commissioner may "notice" the application and his official records for the purpose of determining if his jurisdiction to decide the issues of public need, profitable operation and undue harm to existing associations, has been properly invoked.

Not only this but the court has also sanctioned the use by the hearing officer of the information contained in the application and attached exhibits "in reporting the underlying facts supporting his order," notwithstanding these documents were not offered in evidence by the applicant.

As I see it, this raises serious questions of due process by reason of the absence of opportunity for cross-examination. Moreover, the administrative process is confused as to the initial burden on the applicant, and one is left to wonder at what point and under what showing are facts to be considered as established and subject to refutation.

POPE, J., joins in this Dissent.