**COLORADO COUNTY FEDERAL SAVINGS AND LOAN ASSOCIATION et al.,**
Appellants,

v.

**W. Sale LEWIS, and Savings and Loan Commissioner of Texas et al.,**
Appellees.

No. 12038.

Court of Civil Appeals of Texas, Austin.

July 18, 1973.

Rehearing Denied Aug. 8, 1973.

John J. McKay, McKay & Wash, Gary Evatt, Law Offices of Joe R. Long, Austin, for appellants.

John L. Hill, Atty. Gen., of Texas, John H. Banks, Asst. Atty. Gen., Dudley D. McCalla, Heath, Davis & McCalla, Austin, for appellees.

PHILLIPS, Chief Justice.

This is a suit for judicial review of an order of the Savings and Loan Commissioner approving the application of Austin Savings and Loan Association of Austin, Travis County, Texas, for permission to establish and operate a branch office in La Grange, Fayette County, Texas. The trial court held the order valid, hence this appeal.

1. Appellants are South Central Savings Association, Brenham, Tex., Colorado County Federal Savings and Loan Association, Smithville Federal Savings and Loan Association, The First National Bank, La Grange, Texas and Fayetteville Bank.

We affirm.

Appellants [1] are before us on a number of points of error, the first being that of the trial court in failing to hold the order invalid because of certain procedural errors committed by the Commissioner and/or the hearing officer. This point is broken into a number of sub-points which assign error to the following: the submission to the Commissioner by the hearing officer, and the conference between the hearing officer and the Commissioner regarding a written summary prepared by the hearing officer of the evidence at the administrative hearing, outside the presence of the parties and without notice to the parties, and without incorporating the summary into the record of the administrative proceeding; the failure of the Commissioner to secure from the hearing officer the hearing officer's description of, or his opinion on, the demeanor of the witnesses testifying at the administrative hearing during the absence of the Commissioner; the failure of the Commissioner to secure from the hearing officer the hearing officer's initial or recommended findings of fact in respect to the matter of the branch-office application of Austin Savings & Loan Association; the failure of the Commissioner to secure from the hearing officer an initial or recommended decision on the matter of the branch office application of Austin Savings and Loan Association. We overrule these points.

The hearing officer for the Savings and Loan Commissioner conducted and presided over the entire administrative hearing wherein a record of some 1300 pages was compiled. Portions of the hearing were held on seven different days after which the Savings and Loan Commissioner rendered the decision in question. The Commissioner himself sat in on several sessions

Appellees are Austin Savings and Loan Association and W. Sale Lewis, Savings and Loan Commissioner of Texas.

of the hearing. At the conclusion of the hearing the hearing officer submitted his handwritten summary of the testimony of the witnesses appearing to the Commissioner, along with the formal hearing record.

Article 342–205(b), Vernon's Civil Statutes empowers the Commissioner to appoint hearing officers, prescribes their qualifications, confers on hearing officers the authority "to conduct such investigations or public hearings as may be required by law of the Savings and Loan Commissioner", and vests hearing officers with the same power in conducting hearings as the Commissioner would have if he were personally present. The statute precludes the hearing officer from making a final order on the subject matter of the hearing and further provides: ". . . the record of any investigation on public hearing conducted before the Hearing Officer may be considered by the Savings and Loan Commissioner in the same manner and to the same extent as evidence that is adduced before him personally in any such proceeding."

Neither article 342–205(b) nor any other statutory provision requires the Commissioner to secure a report (or prohibits him from doing so) of any type from the hearing officer who conducted the administrative hearing. Neither the federal nor state constitution requires, as a general rule, that the deciding officer of an administrative agency be present at the administrative hearing where evidence is adduced. Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936). Davis Administrative Law Treatise, Sec. 11.02, p. 39 (1958).

Article 342–205(b), cited above, negates any requirement that a report of any kind be submitted by the hearing officer to the Commissioner by providing that the *record* conducted before the hearing officer may be considered by the Commissioner *in the same manner* and *to the same extent* as evidence that is *adduced before*

*him personally* in any such proceeding. Due process demands no more. As Professor Davis states in his Treatise mentioned above: "The officer who makes the determinations must consider and appraise the evidence which justifies them. The Supreme Court has never imposed a greater requirement . . ." Davis, § 11.02, p. 39. Our own legislature has never imposed a greater requirement and we cannot find any justification for this Court doing so. The record afforded the Commissioner is full and complete. Neither appellant in this case has alleged that the Commissioner did not consider and fully appraise the evidence in the record of this case. Every fact and legal presumption is that he did so. Consequently, we presume that the Commissioner based his decision on the same evidence presented the hearing officer. We hold that administrative due process is not denied under this procedure. Contrary to appellants' contention, this Court's oinion in Bank of North America v. State Banking Board, 468 S.W.2d 529 (Tex.Civ.App.1971, no writ) is not authority for requiring demeanor reports be submitted to the Commissioner.

We also overrule appellants' points, briefed together, assigning error to the trial court in failing to hold that the order in litigation and the Commissioner's affirmative findings with respect to the criteria of public need and profitable operation are not reasonably supported by substantial evidence; in failing to hold that the Commissioner committed reversible error in basing the order under review and his ultimate, affirmative findings with respect to the standards of public need and profitable operation upon the findings and determination that the loans needed by the public and the loans required to render the proposed branch office a profitable operation to the applying association within a reasonable period of time need not exist within the community to be served by the proposed branch office.

The method of review in cases of this type is well settled. Review is based

on the facts and circumstances developed in the record made at the hearing before the Commissioner. Gerst v. Nixon, 411 S. W.2d 350 (Tex.1966); Spring Branch Savings and Loan Association v. Gerst, 420 S.W.2d 618 (Tex.Civ.App., Austin, 1967, writ ref. n. r. e.). The validity of the order of the Commissioner is judged under the substantial evidence rule, and the action of the Commissioner must be sustained if the order and each finding essential to its validity are reasonably supported by substantial evidence. The Commissioner's order is presumed valid and the burden is on the litigant who would overturn the order. The reviewing court does not substitute its discretion and judgment for that of the Commissioner. Gerst v. Guardian Savings and Loan Association, 434 S.W. 2d 113 (Tex.1968); Gerst v. Nixon, *supra*, Phillips v. Brazosport Savings and Loan Association, 366 S.W.2d 929 (Tex. 1963). On review, the inquiry is whether the Commissioner's decision was arbitrary and made without regard to the facts, that is, without reasonable support in substantial evidence. Phillips v. Brazosport Savings and Loan, *supra*.

The record discloses that the Commissioner is aware of many communities in the state in which ample savings are available but in which there is little demand for loans. He indicated that, in his view, it is proper, under existing statutory and regulatory standards, to establish a savings and loan facility in such a community even though the loans required to make the operation profitable do not exist within the community to be served by the proposed facility. Appellants, apparently, do not quarrel with the view that once established, a savings and loan institution may secure loans in one county or community and make loans in another. Appellants do contend, however, that it is not proper under existing statutory and regulatory standards to authorize the establishment, prospectively of a facility, absent a showing that the loans required to make the operation profitable and to demonstrate a public need for

loan service exists in the community to be served.

The findings of the Commissioner in respect to this specific issue disclose that, in his view, the loans required for profitability need not exist within the community. With respect to savings volume, the Commissioner found in his order that a branch office located in La Grange "would receive sufficient savings deposits to become a profitable operation to the applying association within a reasonable period of time . . ." With respect to the loan volume, the Commissioner found that such savings would not be required to be loaned in Fayette County and found that the branch office in question can be profitable to an association if it attracts savings deposits that can be loaned elsewhere by the association. The Commissioner further found that the appellees will be able to lend the savings funds deposited with the branch in question or in its other lending areas.

■ We find no error in these findings. This record discloses that it is common practice for savings and loan institutions to use savings secured at one location to be used as loans at another. This Court recognized this practice in Strain v. Lewis, 461 S.W.2d 498 (Tex.Civ.App.1971, writ ref. n. r. e.). There is nothing in the statutes nor in the Commissioner's rules to preclude it. We also hold that this practice or method of operation can satisfy the statute's requirement for "public need" or "community need" as defined in Gerst v. Nixon, 411 S.W.2d 350 (Tex.1966) for the establishment of a branch office. We hold further, that this practice or method of operation can be compatible with the Commission's Rule 2.4(h) requiring that a branch applicant must prove that "the volume of business in the Community in which the proposed branch office will conduct its business is such as to indicate a profitable operation to the association within a reasonable period of time."

■ This record and the record previously made before the Commissioner and

passed upon by this Court in Gerst v. South Central Savings and Loan Association (cause no. 11,508 and 11,510, unpublished opinions, Austin Court of Civil Appeals; filed April 19, 1967) disclose an unusually large amount of savings in the La Grange-Fayette County area. Heretofore, the banks have been reaping the benefits of this situation. The interest rates of savings and loan institutions are generally higher than those of the banks which fact in itself would be substantial evidence of a community need for this service under this record. In addition there are services such as passbook and certificates of savings accounts ranging from 5% to 6½% (these rates being greater than those offered by the area banks) 25 year real estate loans; home improvement loans, personal loans, mobile home loans and others. Rules prescribing a standard for branch offices that are less exacting than those prescribed by statute for association charters. This is in harmony with the general objectives of the Savings and Loan Act. Gerst v. Oak Cliff Savings and Loan Association, 432 S.W.2d 702 (Tex.1968).

Witnesses for South Central Savings and Loan, Smithville Federal and Colorado County Savings and Loan Association, testified that the savings business from Fayette County alone has proved profitable to their associations.

█ Irrespective of the Commissioner's view of the law, or that of this Court, on the practice of a proposed branch office's plan to secure savings in the community to be served and lending them elsewhere, there is substantial evidence in this record of a need for a lending service in Fayette County, such as that afforded by a Savings and Loan Association branch. Colorado County's vice president testified that the fact that the majority of the loans are now being made by banks and individuals in Fayette County (La Grange) indicates a need for a savings and loan service in that locality because savings and loan institutions make loans for longer terms. The

record discloses that the term of a loan from a savings and loan institution is nearly double that of a bank or private loan.

█ We also overrule appellants' point assigning error to the trial court in failing to hold that the findings of the Commissioner that conditions relating to the issues of public need and profitable operation have substantially and materially changed for the better since the time the Commissioner denied the La Grange branch office application of South Central by order upheld by this Court in Gerst v. South Central Savings and Loan Association, causes numbered 11,508, 11,510, is not reasonably supported by substantial evidence.

Our discussion of this point necessarily includes a continuation of the discussion of the last point immediately preceding. A summary of the evidence of changed conditions and the present strength of the money market in the Fayette County (La Grange) area presents substantial evidence sufficient to uphold the Commissioner's order.

Deed of trust information presented by appellants for 1969, 1970, 1971, amounted to $21,945,641.40 whereas the totals presented by appellee were $21,301,058. The deed of trust records for the two year, 11½ month period in 1963–65 amounted to approximately $10,819,000. Thus, deed of trust recordings in 1969–71 were about *twice* that adduced in the earlier hearing.

The previous record to which appellants refer does not contain testimony from the executive vice president of Colorado County Federal Savings and Loan Association to the effect that the fact that more than a majority of the loans in Fayette County were made by individuals and banks indicated a *need* for savings and loan services in the area to provide long term loans.

The record discloses that from 1950 to 1965, personal income in Fayette County increased by $8,000,000 or an average of approximately $500,000 per year. From 1965 to 1969, personal income in Fayette

County increased by approximately $11,-000,000 or an average of approximately $2,750,000 per year.

Total deposits in Fayette County banks increased from $21,819,000 at the end of 1960 to $27,047,000 at the end of 1965 and to $52,276,000 at the end of 1971. These figures show that the average annual increase from 1960 to 1965 was $1,045,592. The average annual increase from 1965 through 1971 was $4,204,675.

With respect to time and savings deposits of Fayette County banks, the record discloses that the average yearly increase from 1960 to 1964 was $505,000 per year while the average yearly increase from 1966 to 1970 was $2,270,000.

At the time of the above mentioned hearing in 1965, Colorado County held savings accounts from Fayette County residents totalling approximately $4,400,000. From the end of 1965 to January 1972, these savings deposits increased by almost $3,000,000 to a total of $7,347,187.

Smithville Federal was chartered in 1934 and its total savings in the thirty-one years from 1934 to 1965 grew to $4,700,000. In the next six years, to the end of 1971, the total savings of Smithville Federal increased by approximately $3,600,000 to a total of $8,339,000.

In the previous proceeding, South Central Savings projected loans to be made in Fayette County in its first year of operation of $500,000, and $750,000 in each of the second and third years. The charter applicants projected loans of $1,800,000 in Fayette County in its first year of operation and $1,750,000 in the second and third years. While Austin Savings plans to participate fully in meeting the loan demand which exists in Fayette County, it will lend the savings funds deposited in its Fayette County branch in other lending areas if the loan demand in Fayette County does not absorb all of such funds.

The average length of real estate loans of the First National Bank of La Grange in 1965–1966 was approximately 12½ years. However, by January of 1972, the average term of real estate loans of this bank had decreased to approximately 11 years. Once again we repeat the evidence of the vice president of Colorado County to the effect that evidence showing that a majority of the loans in the county were made by banks and individuals would indicate to him a need for savings and loan services in the area and a need for a savings and loan service in the area capable of making long-term loans.

At the time of the prior hearing, South Central had approximately $600,000 in loans in Fayette County and approximately $1,402,000 in savings. However, by the end of 1971, the savings of South Central from Fayette County had increased to $2,654,320 whereas its outstanding loans in the County had decreased to $358,356.

In the previous opinion of this Court in the *South Central* case, there was evidence of what was then called "the tight money situation" when those matters were before the Commissioner. No such evidence is found in the record now before this Court.

There is other evidence before us in support of the Commissioner's order, however, it would unduly lengthen this opinion to state it. Consequently, we hold that the foregoing evidence discloses substantial and material changes in the economic conditions in the Fayette County area from 1965 to the date of the hearing on Austin Savings' application in 1972. This evidence is ample to support the Commissioner's findings on public need, profitability, and absence of undue harm.

■ We will overrule appellants' points on incompetent and hearsay evidence, attributable to several witnesses. From an examination of the record as a whole, we are unable to say that the admission of the evidence asserted to be hearsay was harmful because, disregarding this evidence, we are of the opinion that the Commissioner's order was still supported by substantial evidence. Citizens of Texas Savings and

Loan Association v. Lewis, 483 S.W.2d 359 (Tex.Civ.App. Austin, 1972, no writ).

We are not unmindful of the evidence presented by appellants attacking the order before us. This hearing before the Commissioner lasted seven days and was vigorously contested. While the factual evidence (other than opinion evidence) that we have presented in support of the order was largely undisputed, appellants presented evidence to the effect that between the census dates in 1960 and 1970, the population of Fayette County decreased from 20,384 to 17,650, or a decline of more than 2,700 persons or 13.4%. That in the three years immediately preceding the hearing in question there were only 24 building permits authorized in the city of La Grange. Other evidence relative to the loan demand of the savings and loan institutions adjoining Fayette County was presented with the purpose of showing the lack of loan demand in Fayette County itself. The evidence was presented for the purpose of proving that appellee, Austin Savings, would not generate the loans required for the profitable operation of a branch office in Fayette County. While this is some evidence in derogation of the order, this Court is still of the opinion that the order is supported by substantial evidence.

We overrule appellants' points concerning res adjudicata and estoppel by judgment. Appellants contend that the court erred in failing to hold that the Commissioner was precluded, under the doctrines of res adjudicata and estoppel by judgment, by reason of this Court's opinion and judgment in causes numbered 11,508 and 11,510, Gerst v. South Central Savings and Loan Association, et al, in which cases this Court sustained the order of the Commissioner denying South Central's application for a branch office in La Grange and denying another group's application for charted savings and loan association in that same city.

The simple answers to this contention are that: (1) the parties in this contest and the previous contest are not the same, 34 Tex.Jur.2d Judgments, Sec. 492, page 546, (2) both the facts and the law have changed since 1965. Estoppel by judgment extends only to facts in issue as they existed at the time judgment was rendered and does not prevent reexamination of the same question between the same parties where, in the interval, facts have changed or new facts have occurred which may alter the legal rights or relations of the parties, 34 Tex.Jur.2d Estoppel by Judgment, Sec. 520. We have listed the changes that have occurred in the interval between the two contests in question.

In addition to these factual changes and each of identity of parties, Rule 2.4(f) of the Rules and Regulations for savings and loan associations which was in effect at the time of the previous opinions, had been repealed at the time the application of Austin Savings was filed, heard and decided. In addition, the law governing branch applications has been changed by the repeal of Rule 2.4(f), *supra*. See this Court's opinion in Gerst v. Gibralter Savings Association, 413 S.W.2d 718 (Tex.Civ.App. 1967, writ ref. n. r. e.).

We also overrule appellants' error assigned to the trial court in failing to strike down the Commissioner's order as violative of appellants' rights to due process of the law under the Fourteenth Amendment of the Constitution of the United States, it being shown that in this adversary proceeding, the order entered by the Commissioner had been prepared by applicants' attorney, and without the knowledge of appellants and their attorney.

While Sec. 2.08 of the Savings and Loan Act provides that the Commissioner shall state his findings in writing, we afford no higher dignity to this than that afforded Rule 296, Texas Rules of Civil Procedure requiring a trial judge to state in writing the conclusions of fact

**732** ■ 

found by him separately from the conclusions of law. It is the universally approved procedure in Texas for the prevailing attorneys to prepare the judgment for the court. Preparation of such judgment is not any less that of the judge (or Savings and Loan Commissioner) because of its preparation by an attorney of record in the case. We also hold that the failure of prevailing counsel to furnish his adversaries with copies of the order, while regrettable, is not reversible error. Rule 434, Texas Rules of Civil Procedure.

Because of the position we have taken in this case, we find it unnecessary to discuss appellants' point relating to their failure to file a motion for rehearing with the Commissioner.

We affirm the judgment of the trial court.

Affirmed.