SNYDER SAVINGS AND LOAN ASSOCIATION et al., Appellants,

v.

W. Sale LEWIS, Savings and Loan Commissioner of Texas, et al., Appellees.

No. 12466.

Court of Civil Appeals of Texas, Austin.

Oct. 6, 1976.

Rehearing Denied Oct. 27, 1976.

Donald J. Hahn, Jr., McCulloch, Ray, Trotti, Hemphill & Meadows, Dallas, for Snyder Sav. and Loan Ass'n and West Texas State Bank.

John L. Hill, Atty. Gen., Thomas M. Pollan, Asst. Atty. Gen., Austin, for W. Sale Lewis, Savings and Loan Commissioner of Texas.

R. Temple Dickson, Mays, Moore, Dickson & Roberts, Inc., Sweetwater, and Jack C. Ogg, Houston, for Sweetwater Sav.

SHANNON, Justice.

Sweetwater Savings Association filed an application with the Savings and Loan Commissioner for a branch office to be located in Mitchell County at Colorado City. Four area savings and loan associations and banks filed written protests in opposition to the branch application. After hearing, the Commissioner granted the application.

Appellants, Snyder Savings and Loan Association and West Texas State Bank of Snyder, Texas, filed suit in the district court of Travis County to set aside the order of the Commissioner. The district court entered judgment affirming the Commissioner's order. We will affirm the judgment.

■ Appellants' first point of error is that the Commissioner's finding that the proposed branch office would be supervised by qualified full-time management was not reasonably supported by substantial evidence.

Rule 2.4(g) of the Rules and Regulations for Savings and Loan Associations requires a finding by the Commissioner that the ". . . proposed branch office will be supervised by qualified full-time management."

The evidence pertaining to management of the proposed branch office consisted of the testimony of appellee Sweetwater Savings Association's president and managing officer, Ed Aiken, Jr. Aiken testified that appellee would have a full-time employee in the proposed branch. He stated that appellee's vice-president, Bernie Hawley, would be directly responsible for the operation of the branch. Hawley, it was said, would spend at least one day each week at the Colorado City branch. On cross-examination, Aiken testified that the full-time employee serving at the proposed branch would probably be an experienced woman living within the Colorado City community.

Appellants argue that there was no evidence concerning Hawley's qualifications, and moreover, that even if Hawley were qualified, his supervision of the branch would not be "full-time" as required by Rule 2.4(g).

Although the record does not show the number of years that Hawley had worked in a managerial capacity with appellee or some other savings association, the evidence was that he was experienced "in this field" and that he had opened appellee's three other branch offices.

■ Rule 2.4(g) requires supervision by "full-time" management. That rule does not require "full-time" supervision by the management, as argued by appellants. Without dispute Hawley worked "full-time" with appellee. With respect to supervision, the testimony was that Hawley spent "at least" one day each week at each branch. The clear implication of the testimony was that Hawley was available, and if he were needed for a greater length of time at the Colorado City branch office, he would be there. Appellants' point of error is overruled.

Appellants' other significant point of error is that the Commissioner's finding that

there was a public need for the proposed branch office was not reasonably supported by substantial evidence.

In the order granting the branch application, the Commissioner set out the "under-lying facts." The portion of the order pertinent to the public need for the proposed branch is set out in the footnote, and no good purpose would be served to again summarize that evidence.[1]

1. The relevant part of the Commissioner's order, without record references, follows:

". . . The home office of the Association is in Sweetwater, Nolan County, Texas, approximately 28 miles from the site of the proposed branch office in Colorado City, Mitchell County, Texas. Nolan County and Mitchell County adjoin one another.

"The proposed location of the branch office is in the vicinity of the intersection of Highway 163 and East Second Street in the City of Colorado City, Mitchell County, Texas. An option is held by the Association near that location in Colorado City. The community to be served by the proposed branch office is the entirety of Mitchell County, as shown on the map received into evidence as Branch Exhibit 3. Colorado City is the largest city in Mitchell County. There are two other towns in the county. They are Loraine and Westbrook.

"The population of Mitchell County in 1970, according to the Census Bureau after a population count was 9,073. The population of Colorado City was 5,227.

"The population of Mitchell County has been fairly stable since 1970; however, its work force has increased during that period of time from 3,700 persons in 1970 to 4,660 persons in 1974. Industrial earnings were $16,102,000 in 1968; $23,757,000 in 1972; and $28,490,000 in 1974.

"Dr. James R. Vinson, testifying as an economic expert, stated that general business activity is healthy and growing in Mitchell County. The Commissioner finds such testimony to be reliable and credible and adopts same as his finding of facts. Some of the economic indicators which the witness studied and viewed as reflecting a healthy, growing economy were: bank debits; sales tax receipts; gross sales; the level of employment; and wages and salaries.

"There is presently only one savings and loan facility located within Mitchell County, the community, that being the home office of Colorado City Savings and Loan Association in Colorado City, Texas. Dr. Vinson observed that the making of mortgage loans in Mitchell County by banks and by 'out of area' savings associations indicated that a locally available source for lending funds could have a good market.

"The existing association in Colorado City has enjoyed excellent growth in recent years. From 1971 to year-end 1974, the total assets of the association increased from $5,682,306 to $9,012,731, and during that same period total savings increased from $5,040,737 to $7,961,-009. The two banks in Mitchell County have also had good growth.

"The proposed branch office will offer a full range of both savings and lending services to the residents of the community. Furthermore, the Association has traditionally been involved in a wide range of civic activities, and through its subsidiaries builds residences and develops land.

"In this regard, the Commissioner further notes that the Colorado City association did not oppose the application on the basis of undue harm or any other ground. While William Sikes, Managing Officer of Snyder Savings and Loan Association, testified in opposition to the application to the effect that operation of such branch office could unduly harm his association, review of the entirety of his testimony reveals that what he considers undue harm is this branch impacting on his association only in terms of lessening his association's profits. It is obvious that approval of this branch office introduces a competitive alternative into the community in the Mitchell County market, but the Commissioner fails to be persuaded that approval of this branch would unduly harm any other association; and, in fact, finds that it would not unduly harm any association.

"Dr. James R. Vinson, an expert witness, had a definition of public need posed to him and was asked, in view of his study and that definition, whether there existed a public need for a branch in Colorado City. It was Dr. Vinson's opinion that such a public need does exist. The Commissioner concludes that such opinion is reliable, credible, and justified in the record and finds that a public need for a branch in Colorado City does exist. Based on the experience of the Association, its proposed budget and the experience of other similar branches, the Commissioner concludes that the applying Association would have a profitable operation within a reasonable period of time.

"The proposed branch office will permit the applying Association to render better service to its substantial number of customers in the community and to attract new customers. As of October 31, 1974, Applicant had 135 savings accounts in the community with total balances outstanding of $1,034,253 and nine mortgage loans totaling $210,101.30 and thirteen loans of other types. There is a demonstrated public need and demand for the services of Sweetwater Savings Association in the community to be served by the proposed branch office, and the ability of the Association to attract the business necessary to insure the profitable opera-

Appellants' point of error will be overruled inasmuch as we are of the opinion that substantial evidence exists in support of the Commissioner's finding that there is a public need for the proposed branch office and the volume of business in the community is such so as to indicate a profitable operation to the association within a reasonable time.

Appellants criticize the Commissioner's reliance upon the testimony of James R. Vinson, an economist called by appellee. Appellants' position is untenable inasmuch as the Commissioner was entitled to believe and to rely upon the testimony of the witness in arriving at his decision to grant the application. *Gonzales County Savings and Loan Association v. Lewis*, 486 S.W.2d 176 (Tex.Civ.App.1972, writ ref'd n. r. e.).

■ Appellants say that appellee will take away savings obtained at the Colorado City branch and use those savings for loans in another location. Such a practice is common in the savings and loan business and is not prohibited. *Colorado County Federal Savings and Loan Association v. Lewis*, 498 S.W.2d 723 (Tex.Civ.App.1973, writ ref'd n. r. e.).

The judgment is affirmed.

tion to the Association of the proposed branch office within a reasonable time is manifest from its existing volume of business within the community. The needed and beneficial services to be provided by the proposed branch office can and will be rendered without an unduly adverse effect on any other association. "Dr. James R. Vinson, a qualified expert in the field of economics, testified: that the volume of business in the community in which the proposed branch office will conduct its business is such as to indicate a profitable opera- tion to Applicant within a reasonable period of time; and that the proposed operation of the branch office will not unduly harm any other association operating in the vicinity of the proposed location. The record as a whole and the various data cited in this part IV of the Order and brought forward by Dr. Vinson at the hearing support the reasonableness and correctness of these opinions. The Commissioner hereby adopts as findings and relies upon said opinions and conclusions of Dr. Vinson."